**UNITED STATES of America, Plaintiff,**

**v.**

**Willard SCHLEGEL, Defendant.**

**CR. 838 L.**

United States District Court, D. Nebraska.

May 27, 1970.

Richard A. Dier, U. S. Atty., J. William Gallup, Asst. U. S. Atty., for plaintiff.

Warren K. Dalton, Lincoln, Neb., for defendant.

URBOM, District Judge.

In seeking an indictment against Willard Schlegel for violation of the income tax laws, the United States government in the hearing before the United States Commissioner placed in evidence the testimony of an internal revenue agent. It was to the effect that Jay L. Dunlap, an attorney who prepared Schlegel's income tax return in 1964, told the agent that he had prepared from summaries furnished by Schlegel a return for Schlegel, whereupon Schlegel took possession of the return and summaries and later brought back the return with different summaries prepared by Schlegel showing less income than did the earlier summaries. Claiming the attorney-client privilege, Schlegel now seeks to have such testimony, whether by the attorney or the internal revenue agent, suppressed from presentation at a scheduled grand jury hearing and at any future trial arising from indictment by the grand jury.

Although the United States raises the question of the authority of the court to order suppression of evidence before a grand jury, the question has been resolved by an announced intention in open court on the part of the government not to introduce the testimony to the grand jury. Relying upon this announcement, the defendant agreed that no ruling need be made with respect to admissibility before the grand jury. Consideration of the motion is limited to the issue of admissibility at a trial to a petit jury in the event an indictment is returned.

Testimony in this court at the hearing on the motion to suppress supports the conclusion that Schlegel had been represented by Dunlap as an attorney previous to 1964 in a variety of matters, including income tax questions. Schlegel's sole purpose in communicating with Dunlap in 1964 was to provide information to Dunlap for preparation of the income tax return.

The defendant's position is that these conversations and the information delivered to the attorney by the defendant, Schlegel, were privileged communications, whereas the government argues that the information was delivered for the purpose of being communicated to the United States tax officials and, accordingly, did not become privileged.

By Rule 26 of the Federal Rules of Criminal Procedure the admissibility of evidence and the competency and privileges of witnesses "shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." In criminal cases no special consideration need be accorded the state statutes or case law. See Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933); Wolfle v. United States, 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617 (1934); and the advisory committee's note under Rule 5–01, Proposed Rules of Evidence for the United States District Courts and Magistrates.

The generally accepted statement of the attorney-client privilege is as follows:

"(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the

communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." 8 Wigmore, Evidence (McNaughton rev. 1961) § 2292, p. 554.

The government's principal contention is that element (4) is not existent in this case, because the communications were not made in confidence. The argument is that the information delivered to the attorney was expected by the client to be transmitted to the taxing authorities and, therefore, not intended to be known only to the client and the attorney. Cited by the government are Pollock v. United States, 202 F.2d 281 (5th Cir. 1953); United States v. Goldfarb, 328 F.2d 280 (6th Cir. 1964), cert. denied 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746; Colton v. United States, 306 F.2d 633 (2d Cir. 1962), cert. denied 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499; Bouschor v. United States, 316 F.2d 451 (8th Cir. 1963); and Deck v. United States, 119 U.S.App.D.C. 240, 339 F.2d 739 (1964), cert. denied 379 U.S. 967, 85 S. Ct. 660, 13 L.Ed.2d 560. None of these cases holds that all information relayed to an attorney for use in the preparation of an income tax return is intended by the client to be transmitted to the government and therefore is nonconfidential.

■■ It is true that papers prepared and owned by persons other than the taxpayer or prepared for purposes other than for use by the attorney and in existence substantially before the client-attorney relationship arose are not privileged. Bouschor v. United States, supra; Deck v. United States, supra. On the other hand, papers prepared by the client for the purpose of confidential communication to the attorney are protected by the privilege. Colton v. United States, supra.

■ The court in United States v. Merrell, 303 F.Supp. 490 (U.S.D.C.N.D.

N.Y.1969) states, probably, the government's position here:

"The material sought herein, is not within the attorney-client privilege as it consists of information not intended by the client to be confidential. The retained copies of the income tax returns are, of course, of a non-confidential nature, as the material was intended to be communicated to third parties; the same is true for the income and expense summaries given to Merrell for inclusion in the returns. The workpapers of Merrell, by definition, consisted of information that was intended to be transcribed onto the tax returns, and cannot be of a confidential nature."

Nevertheless, a more realistic rule would be that the client intends that only as much of the information will be conveyed to the government as the attorney concludes should be, and ultimately is, sent to the government. In short, whatever is finally sent to the government is what matches the client's intent. The fact that the client has relinquished to his attorney the making of the decision of what needs to be included within the tax return should not enlarge his intent or decrease the scope of the privilege. A different rule would not really support the purpose of the privilege, which is to encourage free disclosure of information by the client to the attorney. If the client, not knowing what the attorney would advise be sent or would choose to send to the government, were to think that all information given to his attorney would lose its confidential status by the act of delivery to his attorney, the tendency would be to withhold information which he, without advice of counsel, would suppose was detrimental to him, the client. Thus the attorney, the very one professionally capable of evaluating information, could be of no help in evaluating it, because he would not receive it.

■ In the present case, therefore, aside from the information incorporated in the income tax return which was sent

to the government, the oral conversations between the defendant and his attorney regarding preparation of the return and any written materials prepared by the defendant solely for the purpose of delivery to his attorney for the preparation of his return are within the privilege, unless removed therefrom by the exception hereinafter discussed. This is not to say that Schlegel's books and financial records, as opposed to his summaries of them, are touched by the privilege.

Rule 5–03 of the Proposed Rules of Evidence for the United States District Courts and Magistrates appears to state the generally recognized law and provides:

"(d) EXCEPTIONS. There is no privilege under this rule * * * (1) * * * If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud * * *."

■ It is conceivable that the information given by the defendant to his attorney, other than that actually included within the final income tax return, was given in furtherance of a plan to commit a crime or fraud, which defendant knew or should have recognized as a crime or fraud. If so, the information has lost its privileged nature. It is possible that in some circumstances a communication between a client and his attorney itself would speak the facts necessary to tear away the privilege, but, standing alone, the delivery to an attorney of two sets of information, the second showing less earned income than the first, does not establish the prerequisites for removal of the privilege. It does not show purpose, what was known, what should have been known, or the existence of a crime or fraud.

Under those circumstances, and despite the advisory committee's note in the Proposed Rules of Evidence for the United States District Courts and Magistrates that "no preliminary finding that

sufficient evidence aside from the communication has been introduced to warrant a finding that the services were sought to enable the commission of a wrong is required", it is preferable to require that the conditions of the exception to the privilege be established by evidence other than the communications. Mr. Justice Cardozo in Clark v. United States, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933) said:

> "* * * There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told. There are early cases apparently to the effect that a mere charge of illegality, not supported by any evidence, will set the confidences free. See, e. g., Reynell v. Sprye, 10 Beav. 51, 54, 11 Beav. 618; In re Postlewaite, 35 Ch.D. 722, 724; cf. Regina v. Bollivant [1900] 2 Q.B.D. 163, [1901] A.C. 196. But this conception of the privilege is without support in later rulings. 'It is obvious that it would be absurd to say that the privilege could be got rid of merely by making a charge of fraud.' O'Rourke v. Darbishire, [1920] A.C. 581, 604. To drive the privilege away, there must be 'something to give colour to the charge;' there must be 'prima facie evidence that it has some foundation in fact.' O'Rourke v. Darbishire, loc. cit., supra; also pp. 614, 622, 631, 633. When that evidence is supplied, the seal of secrecy is broken * * *.
>
> "* * * A privilege surviving until the relation is abused and vanishing when abuse is shown to the satisfaction of the judge has been found to be a workable technique for the protection of the confidences of client and attorney * * *."

The court in United States v. Bob, 106 F.2d 37 (2d Cir. 1939), cert. denied 308

U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493, states:

"There must, of course, be first established a prima facie case * * *."

and in Union Camp Corporation v. Lewis, 385 F.2d 143 (4th Cir. 1967) says:

"The attorney-client privilege is withdrawn upon a prima facie showing that the lawyer's advice was designed to serve his client in commission of a fraud or crime."

Of similar flavor is Pollock v. United States, 202 F.2d 281 (5th Cir. 1953):

" * * * (W)here the party is being tried for a crime in furtherance of which the communication to the attorney was made and evidence has been introduced giving color to the charge, it is well settled that the communication is no longer privileged."

Requiring a preliminary foundation is sensible. To admit evidence as being in furtherance of a crime or fraud without proof that it was in furtherance of a crime or fraud is to assume one answer to a pivotal issue in the case. There is no justification for assuming that answer without evidence.

Professor Wigmore suggests a slightly different approach. He says:

"The question is a difficult one. But the solution can perhaps be reached by a ruling on the burden of proof. Where there is some evidence of crime or fraud apart from the communications with the attorney, and there have been transactions with him, *let the burden be on the attorney to satisfy the court* (apart from the jury) that the transaction has to his best belief *not been wrongful, before the claim of privilege is allowed.*" 8 Wigmore, Evidence (McNaughton rev. 1961) § 2299, p. 578.

■ Nevertheless, where, as here, the communications do not speak directly to the issues of intent and the commission of or plan to commit a crime or fraud, the burden should be upon the government to remove the privilege by a showing of all the prerequisites of the exception to the rule.

An order will be entered consistent with this memorandum, directing that the communications now before the court are privileged and will not be admitted in evidence, whether the testimony is by the attorney or the internal revenue agent (if by the latter, the hearsay problem remains), unless a prima facie case is made by other evidence that at the time of the commmunications with his attorney, Schlegel knew or reasonably should have known that inclusion in an income tax return of the lower set of income figures would be or would further a fraud or crime.