**Leone J. SCHENET and Richard C. Hook, Plaintiffs,**

v.

**Wendell W. ANDERSON, Jr., Peter A. Brooke, E. Paul Casey, M. Colyer Crum, Seymour S. Feuer, Edward J. Giblin, Carlton M. Higbie, Jr., Coleman F. Hogan, Theodore H. Mecke, Jr., Martin D. Walker, Joseph D. Williams, and Ex-Cell-O Corporation, Defendants.**

Civ. A. No. 86-CV-75335-DT.

United States District Court, E.D. Michigan, S.D.

Feb. 2, 1988.

Arthur T. Susman, Chicago, Ill., Robert Russel, Detroit, Mich., for plaintiffs.

Robert B. Webster, Birmingham, Mich., Marc P. Cherno, New York City, for defendants.

## OPINION

DUGGAN, District Judge.

This is a suit for violation of federal securities laws. This matter is now before the Court on plaintiff Hook's Motion to Compel the Production of Documents. Oral arguments on the motion were held on December 3, 1987, and the Court took the motion under advisement.

Plaintiff Hook seeks the production of documents from the files of defendants' attorneys, Fried, Frank, Harris, Shriver & Jacobson, ("Fried, Frank") including drafts of an Offer to Purchase Ex–Cell–O stock (the Self–Tender Offer) which Fried, Frank composed. Defendants oppose plaintiff's motion, asserting that the documents sought are protected by the attorney-client privilege.

Confidential information disclosed by a client to an attorney to obtain legal assistance is protected by the attorney-client privilege. *Fisher v. U.S.*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). The purpose of the privilege is to encourage clients to make full disclosures to their attorneys. *Id.; In re Grand Jury Investigation No. 83–2–35*, 723 F.2d 447, 451 (6th Cir.1983). An attorney's communications to a client may also be protected by the privilege, to the extent that they are based on or contain confidential information provided by the client, or legal advice or opinions of the attorney. *U.S. v. Margolis*, 557 F.2d 209, 211 (9th Cir.1977); *Mead Data Central, Inc. v. U.S. Dept. of*

*Air Force,* 566 F.2d 242, 254, n. 25 (D.C. Cir.1977).

 An essential element of the attorney-client privilege is that the communication between the client and the attorney be made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence. *U.S. v. Lopez,* 777 F.2d 543, 552 (10th Cir.1985). The burden of establishing the existence of the privilege is on the person asserting it. *In re Grand Jury Investigation No. 83–2–35,* 723 F.2d 447, 450 (6th Cir., 1983), *cert. denied* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984).

Plaintiff asserts that the attorney-client privilege is not applicable to the documents in the present case because the information contained in the drafts of the tender offer was not transmitted to Fried, Frank with the expectation that it would be kept confidential; it was disclosed for use in preparing a document to be disclosed to the public.

A split of authority exists regarding whether information disclosed to an attorney with the intention that the attorney draft a document to be released to third parties is protected by the attorney-client privilege.[1] Plaintiff cites *In re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir.1984) as support for its position. The Fourth Circuit held, in that case, that the attorney-client privilege did not apply to information communicated by the client to the attorney with the understanding or intention that the communication was to be made known to others (e.g., in the form of a stock offering brochure or an income tax return.) *In re Grand Jury* at 1356.

"[A] statement or communication made by a client to his attorney with the intent and purpose that it be communicated to others is not privileged." Nor is the loss of the privilege confined to "the particular words used to express the communication's content" but extends "to the substance of a communication," since the disclosure of " 'any significant part' of a communication waives the privilege" and requires the attorney to disclose "the details underlying the data which was to be published."

*In re Grand Jury* at 1356.

In *In re Grand Jury,* the government subpoenaed an attorney to testify before a grand jury regarding conversations with his client made in connection with the preparation of a prospectus for a proposed private placement of limited partnership interests. (The proposed prospectus was never issued.) *In re Grand Jury* at 1354. The *In re Grand Jury* court held that the information given to the attorney was to assist in preparing a document to be seen by others, and was not intended to be kept confidential. Thus, the attorney-client privilege was not applicable.

Subsequently, the Fourth Circuit limited its holding in *In re Grand Jury,* in *U.S. v. (Under Seal),* 748 F.2d 871, 875 (4th Cir. 1984). The *(Under Seal)* court noted that, while the existence of the attorney-client relationship does not, by itself, lead to a presumption that attorney-client communications are confidential, "a layman does not expect his attorney to routinely reveal all that his client tells him. Rather than look to the existence of the attorney-client relationship or to the existence or absence of a specific request for confidentiality, we

---

1. *Compare In re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir.1984); *U.S. v. Pipkins,* 528 F.2d 559, 563 (5th Cir.1976), *cert. denied,* 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191; *U.S. v. Cote,* 456 F.2d 142, 145, n. 3 (8th Cir. 1972); *U.S. v. Bump,* 605 F.2d 548, 550–51 (10th Cir.1979); *U.S. v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983) (holding that information disclosed to an attorney for transmission to a third party is not subject to the attorney-client privilege) *with U.S. v. Schlegel,* 313 F.Supp. 177, 179 (D.Neb.1970); *S.E.C. v. Texas International Airlines, Inc.,* 29 F.R.Serv.2d 408, 410 (D.D.C.1979);

*U.S. v. Schmidt,* 360 F.Supp. 339, 350, n. 35 (M.D.Penn.1973); *U.S. v. Willis,* 565 F.Supp. 1186, 1193 (S.D.Iowa 1983); and *Natta v. Hogan,* 392 F.2d 686, 692 (10th Cir.1968) (holding that the attorney-client privilege was waived only as to the information ultimately disclosed). *See also U.S. v. Upjohn Co.,* 600 F.2d 1223, 1227, n. 12 (6th Cir.1979) *rev'd on other grounds,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (corporation's voluntary disclosure to the Securities and Exchange Commission amounted to a waiver of the attorney-client privilege only with respect to the facts actually disclosed.)

must look to the services which the attorney has been employed to provide, and determine if those services would reasonably be expected to entail the publication of the clients' communications." *U.S. v. (Under Seal)* at 875. The court distinguished *In re Grand Jury* from the case before it, because, in *In re Grand Jury*, the client had decided to publish a prospectus *before* approaching their attorneys, thus indicating that the attorney had been retained to convey information to third parties, not to provide legal advice for the client's guidance. In *(Under Seal)*, the client had retained an attorney to investigate the possibility of filing papers, which if filed, would be disclosed to third parties. *(Under Seal)* at 875. The court went on to hold that it is only when the client authorizes the attorney to perform services which demonstrate the client's intent to have his communications published that the client will lose the right to assert the privilege as to the subject matter of those communications. *(Under Seal)* at 876.[2]

Other courts have extended the attorney-client privilege to cover all information not actually published to third parties, even if the information were disclosed to an attorney in connection with the preparation of a document to be issued to a third party. *U.S. v. Schlegel*, 313 F.Supp. 177, 179 (D.Neb.1970). The *Schlegel*[3] court stated:

> [A] ... more realistic rule would be that the client intends that only as much of the information will be conveyed to the [third party] as the attorney concludes should be, and ultimately is, sent to the [third party]. In short, whatever is finally sent to the [third party] is what matches the client's intent. The fact that the client has relinquished to his attorney the making of the decision of what needs to be included within the tax return should not enlarge his intent or decrease the scope of the privilege. A different rule would not really support

the purpose of the privilege, which is to encourage free disclosure of information by the client to the attorney. If the client, not knowing what the attorney would advise be sent or would choose to send to the [third-party], were to think that all information given to his attorney would lose its confidential status by the act of delivery to his attorney, the tendency would be to withhold information which he, without advice of counsel, would suppose was detrimental to him, the client. Thus the attorney, the very one professionally capable of evaluating information, could be of no help in evaluating it, because he would not receive it.

*Schlegel* at 179.

The *Schlegel* rule has been adopted by several other courts: *S.E.C. v. Texas International Airlines, Inc.*, 29 F.R.Serv.2d 408 (D.D.C.1979); *U.S. v. Schmidt*, 360 F.Supp. 339, 350, n. 35 (M.D.Penn.1973); *U.S. v. Willis*, 565 F.Supp. 1186, 1193 (S.D.Iowa 1983).

■ In the Court's opinion, the *Schlegel* rule encourages clients to disclose information freely to their attorneys, and thus is most consistent with the purpose of the attorney-client privilege. Therefore, the Court declines to follow the Fourth Circuit's opinion in *In re Grand Jury* (as modified by *U.S. v. (Under Seal)*, and adopts the holding of the court in *U.S. v. Schlegel*, 313 F.Supp. 177, 179 (D.Neb. 1970). Accordingly, the attorney-client privilege applies to all information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons. With regard to preliminary drafts of documents intended to be made public, the court holds

---

**2.** The *(Under Seal)* court noted that the client's intent to have a communication to his or her attorney published would destroy the attorney-client attorney privilege even if the communication were not published because of some fortuity. *(Under Seal)* at 876. The attorney-client privilege would remain intact, however, where

the client decides not to publish the communication. *Id.*

**3.** In *Schlegel,* the client disclosed information to an attorney for preparation of an income tax return.

that preliminary drafts may be protected by the attorney-client privilege. Preliminary drafts may reflect not only client confidences, but also the legal advice and opinions of attorneys, all of which is protected by the attorney-client privilege. The privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties. *S.E.C. v. Texas International Airlines, Inc.,* 29 F.R.Serv.2d 408, 410 (D.D.C.1979); *U.S. v. Willis,* 565 F.Supp. 1186, 1193 (S.D.Iowa 1983).

 In the present case, plaintiff seeks (1) disclosure of all drafts of Ex-Cell-O's self-tender offer; (2) all documents reflecting the identity of each attorney and other person who drafted or participated in the drafting of the tender offer; and (3) all documents reflecting portions or drafts of portions of the tender offer. The Court finds that the first and third items are protected by the attorney-client privilege and thus are not subject to discovery.[4] With regard to the second item, the Court finds that these documents are discoverable to the extent that they do not contain confidential communications from defendants to their attorneys which have not been revealed to third parties, or legal advice or opinions of defendants' attorneys. The Court does not believe that the names of the attorneys and others who worked on the self-tender document are protected by the attorney-client privilege. Therefore, plaintiff's Motion to Compel Production of Documents is granted as to the documents reflecting the identity of the attorneys and others who drafted or participated in drafting the Self-Tender Offer. The remainder of defendants' Motion is denied.

An order reflecting the above will be issued.

---

**4.** Defendants stated, in their Memorandum in Opposition to plaintiff Hook's Motion to Compel, that the preliminary drafts contain "nothing more than the written expression of the discussions among Fried, Frank lawyers, in response to confidential communications from its client, Ex–Cell–O, with respect to the self-tender document." (defendants' Memorandum at 2.)