**Garth D. GUY, Plaintiff,**

v.

**UNITED HEALTHCARE CORPORATION, Defendant.**

**Civ. A. 2:92–CV–397.**

United States District Court, S.D. Ohio, E.D.

June 16, 1993.

Robert Charles Perrin, Columbus, OH, Robert J Feldhake, Gary W. Dolinski, Santa Ana, CA, for plaintiff.

David Stewart Cupps, Vorys, Sater, Seymour & Pease 2, Columbus, OH, for defendant.

## OPINION AND ORDER

KING, United States Magistrate Judge.

Plaintiff brings this diversity action under 28 U.S.C. § 1332(a) asserting various state law claims against defendant. This matter is now before the Court on plaintiff's motion to compel discovery.[1]

In this action, plaintiff generally seeks a finder's fee for allegedly facilitating the ac-

quisition by defendant United Healthcare Corporation ["UHC"] of Physicians Healthcare Plan Corporation ["PHP"]. PHP is now a wholly owned subsidiary of the parent UHC. Plaintiff seeks numerous documents that relate to UHC's acquisition of PHP, and UHC claims the protection of the attorney-client privilege or the work product doctrine in connection with the disputed documents.

On January 8, 1993, plaintiff filed a motion to compel discovery from defendant. Defendant responded, asserting that the "local practice is to submit withheld documents *in camera* to the Magistrate." *Exhibit D attached to Plaintiff's Motion to Compel Production of Documents and For Other Relief.* On March 9, 1993, this Court ordered defendant to produce a privilege log for the disputed documents so as to enable the plaintiff and the Court to evaluate whether defendant had carried its burden of establishing its claims to the attorney-client privilege and the work product doctrine. *Opinion and Order of March 9, 1993,* pp. 3–4. The Court also ordered the defendant to include in the privilege log a general description of each document, the identities of the writer(s) and recipient(s), the date of the document, and the basis for the assertion of either the attorney-client privilege or the work product doctrine. *Id.*

■ Defendant has now prepared a privilege log. Both parties, however, assume that the Court will nevertheless review *in camera* all documents for which the attorney-client privilege or the work product doctrine is claimed. Such a procedure would constitute, in this Court's estimation, an expenditure of judicial resources that could be justified only by an implicit determination that the representations made by defense counsel are untrue. That determination is unwarranted, and the Court declines to undertake an *in camera* review of the requested documents.[2]

---

1. Plaintiff's motion is captioned "Objections by Plaintiff to Claims of Privilege Asserted by Defendant as to Documents and Motion to Require Defendant to Produce Documents for In Camera Inspection and to Provide Information to Plaintiff."

2. Plaintiff has available to him, of course, other methods of testing the accuracy of the representations made in the privilege log.

■ The Federal Rules of Civil Procedure contemplate broad discovery of "any matter, *not privileged*, which is relevant to the subject matter involved in the pending action." (emphasis added). Rule 26(b)(1), F.R.Civ. Pro. *See also Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Marshall v. Bramer,* 828 F.2d 355 (6th Cir.1987). The liberal application of this Rule is tempered, however, by the constraints imposed by the attorney-client privilege and the related work product doctrine. *See Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Hickman,* 329 U.S. 495, 67 S.Ct. 385.

## I. ATTORNEY–CLIENT PRIVILEGE

■ The attorney-client privilege, where not waived, protects communications relating

> to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing primarily either an opinion of law or legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort.

*United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358 (D.Mass.1950). *See also Upjohn Co.,* 449 U.S. at 389, 101 S.Ct. at 682. The purpose of the privilege is to promote "full and frank communications between attorneys and their clients[,] . . . thereby encourag[ing] observance of the law and aid[ing] in the administration of justice." *Commodity Futures Trading Com. v. Weintraub,* 471 U.S. 343, 348, 105 S.Ct. 1986, 1990, 85 L.Ed.2d 372 (1985). The privilege is available to corporate entities as well as to natural persons. *Id.; Upjohn Co.,* 449 U.S. at 390, 101 S.Ct. at 683. Because the attorney-client privilege may, however, serve as a

mechanism for frustrating the investigative or fact-finding process, the privilege is to be narrowly construed. *See In re Grand Jury Investigation No. 83–2–35,* 723 F.2d 447, 451 (6th Cir.1983), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984). Accordingly, the party seeking protection under the privilege carries the burden of establishing the existence of that privilege. *Id.* at 450. *See also Schenet v. Anderson,* 678 F.Supp. 1280, 1282 (E.D.Mich.1988).

■ Ohio's law of privilege, which is applicable in this diversity action by the operation of Federal Rule of Evidence 501, also recognizes the attorney-client privilege.[3]

## A. PHP Documents

UHC, the current corporate parent of PHP, has control over documents generated by both UHC ["UHC documents"] and PHP ["PHP documents"] in connection with UHC's acquisition of PHP. At the outset, plaintiff takes the position that, because UHC was not originally a party to PHP's documents, those documents have lost any privileged character that they may otherwise have enjoyed.[4]

■ The attorney-client privilege conferred upon a corporate entity is not lost merely by a change in management or structure on a corporate-wide basis. *See Commodity Futures Trading Com. v. Weintraub,* 471 U.S. at 349, 105 S.Ct. at 1991. In fact, "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Id. See also In re Grand Jury Subpoenas,* 734 F.Supp. 1207, 1211 (E.D.Va.1990). The disclosure of otherwise privileged materials to a parent by a wholly owned subsidiary will not result in a

---

3. "The following persons shall not testify in certain respects:
 (A) An attorney, concerning a communication made to him by his client in that relation or his advice to his client, . . ."
O.R.C. § 2317.02(A). There appears to be no material difference between Ohio's attorney-client privilege and the federal common law privilege. *See, e.g., State v. Post,* 32 Ohio St.3d 380, 385, 513 N.E.2d 754 (1987).

4. Plaintiff also asserts that UHC has generally failed to identify all of the recipients of the docu-

ments at issue, and asserts that "all documents should be made available to plaintiff unless UHC is able under oath to identify who the recipients of each document were." *Objections by Plaintiff to Claims of Privilege Asserted by Defendant as to Documents and Motion to Require Defendant to Produce Documents for In Camera Inspection and to Provide Information to Plaintiff,* p. 14. Plaintiff may utilize Rule 11 of the Federal Rules of Civil Procedure should he discover any intentional misuse of the discovery process.

waiver of the attorney-client privilege. *United States v. American Tel. & Tel. Co.*, 86 F.R.D. 603, 616 (D.D.C.1979); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1175 (S.D.Cal.1975). *See also In re Diasonics Secur. Litigation*, 110 F.R.D. 570, 574 (D.Colo.1986); *Roberts v. Carrier Corp.*, 107 F.R.D. 678, 687 (N.D.Ind.1985). PHP's attorney-client privilege has not, accordingly, been waived solely by virtue of UHC's control of the PHP documents upon its acquisition of PHP.

■ Defendant specifically claims the attorney-client privilege for PHP document numbers 1, 5, 6, 12, 13, 15–17, 28, 29, 31, 34–36, 56, 60, 65, 66, 69, and 82–83.[5]

■ The party invoking the protection of the attorney-client privilege must establish the following:

(1) Where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by his legal advisor, (8) except the protection be waived.

*Fausek v. White*, 965 F.2d 126, 129 (6th Cir.1992) (quoting *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir.1985)); *United States v. Goldfarb*, 328 F.2d 280 (6th Cir.), *cert. denied* 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964).

■ Attorneys from the law firm of Vorys, Sater, Seymour and Pease ["VSSP"] represented PHP during the time period in which the documents at issued were generated. PHP Document 1 is a memorandum from one VSSP attorney to others regarding legal issues surrounding two offers to buy PHP. This document is clearly protected by the attorney-client privilege and is thus protected from disclosure.

■ PHP Document 5 is a facsimile transmittal, from an attorney for PHP to a VSSP attorney, of a draft disclosure letter between UHC Management Co., UMC Acquisition, Inc. and PHP. PHP Document 66 is a memorandum from a VSSP attorney to the PHP Board of Directors, containing a draft of the agreement and plan of acquisition between UHC and PHP. Preliminary drafts of communications subsequently sent to third parties, to the extent they reflect legal advice, are covered by the attorney-client privilege. *See Schenet v. Anderson*, 678 F.Supp. 1280. Defendant has established the existence of the attorney-client privilege for PHP Documents 5 and 66.

■ PHP Document 6 is a memorandum from VSSP to the Board of Directors of the "ABC Corp." regarding the fiduciary duties of corporate directors. The attorney-client privilege is personal to the client. *Fisher v. United States*, 425 U.S. 391, 403–405, 96 S.Ct. 1569, 1577–1578, 48 L.Ed.2d 39 (1976). To the extent that the "ABC Corp." is PHP, the attorney-client privilege is properly claimed for PHP Document 6.

■ Defendant also claims the attorney-client privilege for PHP Document 12, which is a draft of the minutes of a meeting of the PHP Board of Directors held on August 21, 1991. Defendant has failed to establish that this document pertains to any request for legal advice from PHP. Accordingly, PHP Document 12 is not protected by the attorney-client privilege.

■ Defendant asserts the attorney-client privilege for PHP Document 13. This document is a letter from VSSP to the PHP Board of Directors in which VSSP provides legal advice to the Board. It appears that defendant has already disclosed PHP Document 13 to the plaintiff. *See Exhibit C attached to Objections by Plaintiff to Claims of Privilege Asserted by Defendant as to Documents and Motion to Require Defendant to*

---

**5.** Plaintiff has objected specifically to the assertion of the attorney-client privilege for these documents. Absent any specific objection by plaintiff, documents numbered 2–4, 7–11, 14, 18–27, 30, 32, 33, 37–55, 57–64, and 67–74 need not be produced by defendant. The privilege log provided by defendant, however, fails to describe or in any way refer to any documents apparently numbered 75 through 81. Defendant has therefore failed to carry its burden of establishing the attorney-client privilege or work product doctrine for documents 75 through 81, and must therefore produce them.

*Produce Documents for In Camera Inspection and to Provide Information to Plaintiff.* The voluntary disclosure of privileged material to third parties waives the attorney-client privilege. *See State v. Post,* 32 Ohio St.3d at 385, 513 N.E.2d 754. Accordingly, PHP Document 13 is not protected by the attorney-client privilege.

■ Defendant invokes the attorney-client privilege for PHP Documents 15–17, 28, 29, 31, 34, 35, 56, 60, 65 and 82. These documents are various legal memoranda written by VSSP attorneys and relating to the acquisition of PHP by UHC. The memoranda reflect legal research into issues surrounding the acquisition. Thus, the attorney-client privilege protects from disclosure PHP Documents 15–17, 28, 29, 31, 34, 35, 56, 60, 65 and 82.

■ Defendant claims the privilege with respect to PHP Document 36, which is described as a memorandum sent by a VSSP attorney to the PHP Board of Directors in connection with an apparently unsuccessful offer to acquire PHP by a third party. PHP Document 36 is protected by the attorney-client privilege.

■ PHP Document 69 is a memorandum from a VSSP attorney to an official of PHP,[6] containing legal advice in connection with a letter from one Sun–Cha Yi. PHP Document 69 is protected by the attorney-client privilege.

■ PHP Document 83 contains various copies of statutes and legal authority accumulated by VSSP attorneys in connection with the provision of legal advice to PHP. This document is protected by the attorney-client privilege.

**B. UHC Documents**

Defendant asserts the attorney-client privilege for UHC Document numbers 1, 2, 3, 9–12, 16–18, 21, 23, 25, 35, 40, 41, 45–50, 52, and 53.

■ UHC Document 1 is a letter or memorandum from the law firm of Dorsey &

Whitney, outside counsel to UHC, to in-house counsel for UHC, providing legal advice to UHC in connection with potential claims by plaintiff. UHC Document 1 is protected by the attorney-client privilege.

■ UHC Document 2 is a memorandum from UHC in-house counsel to UHC corporate officers, rendering legal advice to UHC regarding plaintiff's claims in this action. UHC Document 2 is also protected by the attorney-client privilege.

■ UHC Document 3 is from a UHC corporate officer to UHC in-house counsel and contains materials relating to plaintiff's claims and which were requested by in-house counsel. The attorney-client privilege attaches to UHC Document 3 and precludes its disclosure.

■ UHC Documents 9, 10, 18, 21 and 46 are memoranda from UHC in-house counsel to other UHC in-house counsel or to UHC corporate officers. The memoranda concern legal advice regarding the terms of UHC's acquisition of PHP and issues of due diligence. UHC Documents 9, 10, 18, 21 and 46 are protected from disclosure by the attorney-client privilege.

■ UHC Documents 11, 12, 40, 41 and 53 are also protected by the attorney-client privilege. These documents are collections of notes written by UHC in-house counsel dealing with acquisition issues, negotiation issues, potential shareholder litigation issues and materials relating to the closing of the acquisition transaction. The documents at issue concern the provision of legal services to UHC, and are shielded from disclosure by the attorney-client privilege.

■ UHC Document 16 is also protected by the attorney-client privilege. This document is composed of notes written to UHC in-house counsel in response to the latter's request. Although the privilege log does not identify the source of the notes, the only reasonable inference to reach is that the communication was between the corporation's attorney and its agent. The attorney-

---

**6.** While the recipient, referred to only as "Preston," is not otherwise identified, the privilege log, taken as a whole, clearly establishes this person as an agent of PHP.

client privilege therefore shields UHC Document 16 from disclosure.

 The attorney-client privilege also attaches to UHC Document 17, which is described as a memorandum from UHC in-house counsel to a UHC corporate officer, and reflects "[a]dvice regarding correspondence to DLJ." *Exhibit B attached to Objections by Plaintiff to Claims of Privilege Asserted by Defendant as to Documents and Motion to Require Defendant to Produce Documents for In Camera Inspection and to Provide Information to Plaintiff.* Communications from an attorney to a client "are privileged only if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence," *see United States . v. Defazio,* 899 F.2d 626, 635 (7th Cir.1990). *See also In re Sealed Case,* 737 F.2d 94, 99 (D.C.Cir.1984); *In re Fischel,* 557 F.2d 209, 211 (9th Cir.1977); *Schenet v. Anderson,* 678 F.Supp. at 1281–82. It is unreasonable to conclude that the "advice" provided by the corporation's attorney to the corporation's officer did not constitute legal advice. The protection of the attorney-client privilege therefore attaches to UHC Document 17.

 UHC Document 23 is a memorandum from a writer identified only as "Flottemesch" to UHC in-house counsel and corporate officers. Defendant has failed to establish that the writer participated in a confidential relationship with UHC. Accordingly, UHC Document 23 is not protected by the attorney-client privilege.

 The attorney-client privilege attaches to UHC Documents 25 and 35. Document 25 is described as various "[n]otes, comments and questions on management agreement by [in-house UHC counsel] and others." *Exhibit B attached to Objections by Plaintiff to Claims of Privilege Asserted by Defendant as to Documents and Motion to Require Defendant to Produce Documents for In Camera Inspection and to Provide Information to Plaintiff.* Document 35 was addressed to in-house counsel and is de-

scribed as a "[c]ollection of comments on press release solicited for purposes of giving advice." *Id.* However, defendant indicates only that there were "various" writers of the materials contained in this document. *Id.* Both of these documents satisfy the requirements of the privilege and are therefore protected from disclosure.

 Document 45 is a collection of notes and drafts written by UHC in-house counsel relating to the structure of the subsequent acquisition of PHP by UHC. UHC Document 45 is protected by the attorney-client privilege.

 UHC Documents 47, 48 and 49 are correspondence from Dorsey & Whitney, UHC outside counsel, to UHC in-house counsel and contain legal advice to UHC. These documents are protected by the attorney-client privilege.

 Finally, defendant seeks the protection of the attorney-client privilege for UHC Documents 50 and 52. These documents are collections of various notes and drafts generated by both in-house and outside counsel for UHC. UHC Documents 50 and 52 are entitled to the protection of the attorney-client privilege.

## II. WORK PRODUCT DOCTRINE

Defendant also seeks to prevent the disclosure of PHP Document 12 on the basis of the work product doctrine.[7]

 The work product doctrine described in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), has been codified in Rule 26 of the Federal Rules of Civil Procedure. The work product of an attorney engaged in investigation in anticipation of litigation

> may [be] obtain[ed] only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.... [T]he court

7. Defendant also invokes the protection of the work product doctrine with respect to other documents. Because those documents have already been determined to be privileged from disclosure, however, the Court will not discuss their characterization as work product.

shall protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3). In order for the work product doctrine to apply, the materials in question must be

1. documents or other tangible things

2. prepared in anticipation of litigation or for trial

3. by or for a party or that party's representative.

Fed.R.Civ.P. 26(b)(3); *In re Grand Jury Investigation*, 599 F.2d 1224, 1228 (3d Cir. 1979). Although the doctrine extends to materials prepared before litigation actually commences, the scope of the protection is limited to that time in which a real and substantial possibility of litigation exists. *In re Grand Jury Investigation, supra,* 599 F.2d at 1229; *Home Ins. Co. v. Ballenger Corp.,* 74 F.R.D. 93, 101 (N.D.Ga.1977); *Stix Products, Inc. v. United Merchants & Mfrs., Inc.,* 47 F.R.D. 334, 337 (S.D.N.Y.1969). The mere fact that a document was prepared by an attorney does not necessarily lead to the characterization of that document as work product. *Bristol–Meyers Co. v. F.T.C.,* 598 F.2d 18, 28 (D.C.Cir.1978). Further, work product is not absolutely immune from discovery; upon a showing of a special need for the material and the inability to obtain its substantial equivalent without undue hardship, the opposing party may obtain the information even though it has been classified as work product. Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor, supra.*

Some courts hold that the possibility of litigation must be "identifiable because of specific claims that [have] already arisen." *Grumman Aerospace Corp. v. Titanium Metals Corp.,* 91 F.R.D. 84, 89 (E.D.N.Y. 1981); *In re Grand Jury Investigation,* 412 F.Supp. 943, 948 (E.D.Pa.1976) [the threat of litigation must be real and imminent]; *Home Ins. Co. v. Ballenger Corp.,* 74 F.R.D. at 101 [there must be a substantial probability that litigation will occur and that commencement of such litigation is imminent]. Other courts take the position articulated in 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024, at 198 (1970):

Prudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced. Thus, the test should be whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.

*See United States v. Davis,* 636 F.2d 1028 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981); *In re Grand Jury Investigation,* 599 F.2d 1224, 1229 (3d Cir.1979); *Leonen v. Johns–Manville,* 135 F.R.D. 94 (D.N.J.1990). Some of those courts adopting the "nature of the document and facts" test also require, however, that the "primary motivating purpose behind the creation of the document ... must be to aid in possible future litigation." *Janicker v. George Washington University,* 94 F.R.D. 648, 650 (D.D.C.1982); *United States v. Gulf Oil Corp.,* 760 F.2d 292, 296 (Temp.Emer.Ct.App.1985); *United States v. Davis,* 636 F.2d 1028 (5th Cir.1981); *Hardy v. New York News, Inc.,* 114 F.R.D. 633, 644 (S.D.N.Y.1987); *Osterneck v. E.T. Barwick Industries, Inc.,* 82 F.R.D. 81, 87 (N.D.Ga. 1979) (citing 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024, at 198).

■■■ PHP Document 12 does not qualify for the protection of the work product doctrine. This document reflects a draft of the minutes of a meeting of the PHP Board of Directors held on August 21, 1991. Defendant vaguely refers to litigation threatened by some block of PHP shareholders[8], but does not identify the time frame for that threat and does not connect the threat to the meeting of the PHP Board of Directors. Accordingly, the work product doctrine offers no shield to the disclosure of PHP Document 12.

WHEREUPON plaintiff's motion to compel discovery is in part meritorious and it is

---

8. *See Exhibit A attached to Objections by Plaintiff to Claims of Privilege Asserted by Defendant as to Documents and Motion to Require Defendant to* *Produce Document for In Camera Inspection and to Provide Information to Plaintiff, pp. 2, 7 and Exhibit D, Id.*

to that extent GRANTED. The documents identified as PHP Document numbers 12, 13, and 75 through 81, and UHC Document number 23 must be disclosed. In all other respects, the motion to compel is DENIED.

If any party seeks reconsideration of this Order, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Opinion and Order, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Rule 72(a), F.R.Civ.Pro.; Eastern Division Order 91–3(I)(F)(5).