Michael H. HOLLAND, et al., Plaintiffs,

v.

ISLAND CREEK CORP.,
et al., Defendants.

Michael H. HOLLAND, et al., Plaintiffs,

v.

DRUMMOND COAL CO.,
et al., Defendants.

Michael H. HOLLAND, et al., Plaintiffs,

v.

LINK COAL CO., et al., Defendants.

Civ. A. Nos. 87–1210 SSH, 87–1973
SSH and 90–1347 SSH.

United States District Court,
District of Columbia.

April 7, 1995.

Julia Penny Clark, Ian David Lanoff, Bredhoff & Kaiser, Jeremiah C. Collins, Williams & Connolly, Washington, DC, for plaintiffs.

Jonathan D. Schiller, Gary K. Harris, Randal S. Milch, Raymond Paretsky, Donovan, Leisure, Rogovin & Schiller, Judith Ann Scott, Robert H. Stropp, Jr., Earl V. Brown, Jr., Int'l Brthd. of Teamsters, John R. Mooney, Paul A. Green, Hugh J. Beins, Beins,

**6**

Axelrod, Osborne, Mooney & Green, William I. Althen, Barbara L. Krause, Smith, Heenan & Althen, Thomas P. Gies, Michael A. Bazany, Crowell & Moring, Washington, DC, for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

■ This matter comes before the Court on defendants' motion for reconsideration of Magistrate Judge Robinson's July 7, 1994, Order, denying defendants' motion to compel the production of documents listed on the privilege log of nonparty Bituminous Coal Operators' Association, Inc. ("BCOA") and certain other memoranda. The rulings of a magistrate judge are not to be set aside unless they are "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). At the same time, however, where, as here, the decision under review does not offer a reasoned explanation for its decision, and merely adopts one party's arguments in their entirety, "it is incumbent on the Court to check the adopted findings against the record 'with particular, even painstaking, care.'" *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1408 (D.C.Cir.1988) (quoting *Southern Pacific Communications Co. v. American Tel. & Tel. Co.*, 740 F.2d 980, 984 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985)). Upon consideration of the entire record, defendants' motion for reconsideration is denied except as noted in Part 2.

## Background

During discovery, the trustees produced a June 3, 1988, memorandum prepared by the law firm of Morgan, Lewis & Bockius ("MLB") for the BCOA, which discussed nonconforming agreements and the evergreen clause for purposes of advising the BCOA on the position it should take on the proposed A.T. Massey Company nonconforming agreements. The document concluded that nonconforming agreements should be rejected because they would be in violation of the evergreen clause and jeopardize the actuarial soundness of the funds. In light of an upcoming trustees' meeting on June 7, 1988, the BCOA transmitted the documents to two trustees who invited a representative of the United Mine Workers Association ("UMWA") to attend. The June 3 document was discussed at the meeting and attached to the minutes. Defendants contend that, by producing the document for the June 7 trustees' meeting and then again during discovery, the BCOA has waived the attorney-client privilege for all documents addressing the subject matter of that document. The BCOA asserts that the privilege has not been waived because the trustees and the BCOA shared the document in furtherance of a "common interest" which permitted limited disclosure. Defendants also seek production of: (1) three 1986 memoranda which the BCOA produced in redacted form; and (2) all drafts of contract and trust fund documents that were prepared during the 1978 coal industry negotiations.

## Analysis

1. *The Effect of Disclosure of the June 3, 1988, Document: The Common Interest Rule*

■ Under the common interest rule, individuals may share information without waiving the attorney-client privilege if: (1) the disclosure is made due to actual or anticipated litigation; (2) for the purpose of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties. *See United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1298–99 (D.C.Cir.1980). Whether the parties shared a "common interest" in the anticipated litigation must be evaluated as of the time that the confidential information is disclosed. *See In re UMWA Employee Benefit Plans Litigation*, 159 F.R.D. 307 (D.D.C.1994).

■ Applying these factors to the disclosure of the June 3 document, the Court holds that the finding by the magistrate judge that the trustees and the BCOA shared a common interest in June of 1988 is not clearly erroneous. First, at that time, the trustees and the BCOA had a common interest in prohibiting nonconforming agreements and advocating that the evergreen clause required employers to contribute at the rate established in the 1984 National Bituminous Coal Wage Agreement ("NBCWA") until a new successor

agreement was established.[1] This position was in the trustees' interest because it ensured and improved the actuarial soundness of the funds. This position advanced the BCOA's interest as well because it helped to ensure that BCOA members would not suffer increasing liability caused by employers who abandoned the plans. *See* Exhibit H of Defendants' Motion To Compel the Production of Documents from the BCOA (filed Mar. 14, 1994) ("Defendants' Motion To Compel"). Although there was a chance that the trustees would accept the nonconforming Massey agreements, and thus diverge from the BCOA position, this possibility was remote in light of the trustees' November 24, 1986, resolution, which effectively resolved to reject nonconforming agreements.

Second, the factual circumstances surrounding the disclosure indicate that, although there was no actual or immediately imminent litigation, the disclosure was made "with an eye toward litigation." *Cf. In Re Sealed Case*, 29 F.3d 715, 718 (D.C.Cir.1994) (noting that in the context of the work-product privilege, the "in anticipation of litigation" requirement means only "with an eye toward litigation," not that litigation be certain). Prior to June 1988, litigation over the evergreen clause and nonconforming agreements similar to the proposed Massey agreements already had been commenced in at least three cases, with similar litigation against other employers expected; in one of the cases, the BCOA moved to participate as *amicus curiae* in support of the trustees only six weeks after the June 3 memorandum was created.

 Third, the disclosure was consistent with maintaining confidentiality between the transferor and the transferee. The practice of the trustees in 1988, which had been fol-

lowed for several years, was to keep such legal memoranda confidential. *See* Declaration of Jerry N. Clark ¶ 6 (filed Aug. 9, 1994). Although the trustees disclosed the June 3 document to parties who did not share a "common interest"—the UMWA agent, the Massey companies, and ultimately defendants—the trustees' unilateral disclosure of privileged information without the consent of the joint privilege-holder, the BCOA, cannot waive the privilege for the document.[2] *See In Re Sealed Case*, 29 F.3d 715, 719 (D.C.Cir. 1994). Accordingly, the magistrate judge's denial of the motion to compel in this regard was not clearly erroneous.

2. *The Effect of Disclosure of Redacted Versions of the March 31, October 13, and November 17, 1986, Memoranda*

 The BCOA's production of redacted versions of these memoranda has created an issue as to whether the attorney-client privilege for these memoranda has been waived. *See* Exhibits B–D of Defendants' Motion To Compel. All parties agree that it is permissible for a party to disclose the nonprivileged portions of a document while redacting the privileged material, without waiving the privilege for the entire document. *See, e.g., In Re PEPCO Employment Litigation*, No. 86–603, 1992 WL 310783 (D.D.C. Oct. 7, 1992). The only issue is whether the BCOA left some privileged legal advice unredacted and thereby waived the attorney-client privilege for each document in its entirety.[3] The letters from BCOA's counsel to defendants' counsel indicate that, where the memoranda were redacted, privileged legal advice from MLB had been incorporated. *See* Exhibits E–F of Defendants' Motion To Compel. However, neither the BCOA's letters nor its briefs indicate whether the BCOA consistent-

---

1. Although the BCOA acquiesced in the execution of nonconforming agreements prior to 1988, the record indicates that by June of 1988, the BCOA's interest was in preventing employers from negotiating nonconforming agreements.

2. Defendants appear to argue that the trustees' disclosure of the June 3 document to the UMWA agent should be attributed to the BCOA because the trustee who invited the UMWA agent was appointed by the BCOA. (The trustees of the funds are appointed by the settlors of the trusts, the BCOA and the UMWA.) This argument is without merit. Each of the trustees, regardless

of the source of his or her appointment, owes a strict fiduciary duty exclusively to the beneficiaries of the funds. *National Labor Relations Bd. v. Amax Coal Co.*, 453 U.S. 322, 328–30, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981). Therefore, the Court will not attribute the actions of a trustee to the settlor which appointed him or her.

3. The other argument raised by defendants—that the trustees' disclosure of the June 3 memoranda generated a broad subject-matter waiver which included these memoranda—was implicitly rejected in Part 1 of this Opinion.

**8**

ly redacted privileged legal advice from MLB in each of the memoranda or whether the BCOA employed some other criteria for selecting which portions to redact. Therefore, the BCOA is directed to provide additional information on how the redactions were made, and to produce the unredacted memoranda for *in camera* inspection by the undersigned.[4] The Court will stay consideration of this aspect of defendants' motion for reconsideration until that time.

3. *The Effect of Disclosure of the 1978 "Side–By–Side" Drafts*

 During discovery, the BCOA produced various drafts of the 1978 NBCWA and drafts of the plan and trust documents, but withheld other drafts on the grounds that they are protected by the attorney-client privilege. Defendants' primary contention is that the withheld drafts are just different drafts of the same agreements, and that therefore the privilege for the withheld drafts has been waived.[5] The Court disagrees. Recognizing that clients routinely turn over information to their attorneys for evaluation of which parts should be conveyed to a third party and which parts should remain confidential, courts have held that where, as here, several different versions of preliminary drafts of a document exist, and only some are disclosed, "[t]he privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties." *See Schenet v. Anderson,* 678 F.Supp. 1280, 1283–84 (E.D.Mich.1988) (adopting the reasoning applied in *United States v. Schlegel,* 313 F.Supp. 177 (D.Neb. 1970)); *cf. Securities and Exchange Comm'n v. Texas Int'l Airlines, Inc.,* 29 Fed. R.Serv.2d 408, 410 (D.D.C.1979) (following *Schlegel* and holding that, "when a client sends a draft [of a document to be published] to an attorney for review, his intention is to make public only such information as appears appropriate for publication ... according to a lawyer's advice"). In light of the BCOA

counsel's representation that the withheld drafts contain counsel's notes, have always been maintained at the BCOA's law firm, and have never been disclosed to third parties, the Court applies the rule articulated in *Schenet,* and holds that the privilege has been waived only as to the disclosed drafts. Accordingly, the magistrate judge's denial of the motion to compel as to the drafts was not clearly erroneous.

*Conclusion*

Upon consideration of the foregoing, defendants' motion for reconsideration is denied, except as noted in Part 2. The BCOA shall submit a supplemental brief on how the redactions were made and produce unredacted versions of the March 31, October 13, and November 17, 1986, memoranda for *in camera* inspection. An appropriate Order accompanies this Opinion.

---

4. If the BCOA feels that it cannot further explain its redactions without jeopardizing the asserted attorney-client privilege, the supplemental briefing may be submitted *in camera.*

5. Defendants contend that other elements of the attorney-client privilege have not been established but do not specify which elements. In brief, the privilege applies only where (1) the

privilege holder, the client (2) seeks confidential legal advice from a lawyer in his or her capacity as such (3) out of the presence of third parties, and (4) the privilege is not waived. *See In Re Sealed Case,* 737 F.2d 94, 98–99 (D.C.Cir.1984). All of defendants' arguments focus on the waiver element.