774 A.2d 545 (2001)
340 N.J. Super. 254
Joseph LAPORTA, Plaintiff-Respondent,
v.
GLOUCESTER COUNTY BOARD OF CHOSEN FREEHOLDERS and County of Gloucester, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued April 4, 2001.
Decided April 30, 2001.
*546 Christopher M. Farella, Roseland, argued the cause for appellant (Genova, Burns & Vernoia, attorneys; Angelo J. Genova, Livingston and Martin Abramson, Woodbury, of counsel; Mr. Farella, on the brief).
Thomas H. Ward, Woodbury, argued the cause for respondents (Albertson Ward, attorneys; Mr. Ward, on the brief).
Before Judges KEEFE, STEINBERG and WEISSBARD.
The opinion of the court was delivered by KEEFE, J.A.D.
We granted defendants, Gloucester County Board of Chosen Freeholders and the County of Gloucester, leave to appeal from an interlocutory order entered by the *547 Law Division compelling defendants to turn over three documents that defendants contend are protected either by the work-product privilege or the attorney-client privilege. We reverse.
The factual backdrop for the order under review is as follows. Plaintiff was employed by Gloucester County as a Road Supervisor. On August 30, 1994, plaintiff was appointed to his third five-year term. Shortly thereafter, he became the subject of a federal indictment for matters not related to his employment. As a result of the indictment, plaintiff was suspended without pay pending the outcome of the criminal proceedings. On October 4, 1996, plaintiff was found not guilty of all charges in the indictment. It appears from the record that, after plaintiff's acquittal, federal authorities turned over certain information relating to plaintiff's conduct to Gloucester County Counsel Bruce Hasbrouck. Hasbrouck then undertook an additional investigation into plaintiff's activities while Road Supervisor.
Despite plaintiff's acquittal, he was not permitted to return to his employment. Consequently, in January 1997, plaintiff filed a complaint alleging wrongful termination and retaliation. He sought damages and reinstatement.
On February 5, 1997, Hasbrouck was interviewed by Lieutenant Nadine Reese and Investigator Robert Best of the Gloucester County Prosecutor's Office (GCPO). That statement by Hasbrouck consisted of ninety-one pages. Hasbrouck also provided documents supporting the matters discussed in his statement.[1] It is undisputed that, at some point prior to the date of his interview, Hasbrouck initiated contact with the GCPO with respect to the results of his investigation into plaintiff's activities while Road Supervisor. One of the documents turned over to the GCPO by Hasbrouck was titled "MEMO TO FILE-LaPorta," which was also authored by him. Another document was a memo authored by Mike Datz, Acting Road Supervisor, and addressed to Steve Sweeney, Freeholder. A copy of the memo was sent to Hasbrouck, as well as the First Assistant County Counsel, the County Supervisor, Purchasing Agent, and another Freeholder. Datz's memo reflects that it was being sent in response to an inquiry that Hasbrouck had made of the County Administrator on January 16, 1997, seeking information with respect to the "LaPorta matter." The GCPO did not take any criminal action against plaintiff.
When plaintiff subpoenaed documents in the possession of the GCPO with respect to the subject litigation, defendants claimed privilege as to the above described three documents and two others. The five disputed documents were submitted to the motion judge for an in camera review. Although not specifically stating whether Hasbrouck's interview with the GCPO contained either work-product or attorney-client material, the judge held that she did not deem the relationship between the County and the GCPO "to be of such common interest" as to afford defendants protection from disclosure. We infer from the judge's statement that whatever privilege would have attached to the interview, that privilege was waived by communicating it to a party that did not have a common interest with that of the defendants. Accordingly, the judge ordered the interview to be released to plaintiff.
The judge then found that the January 16, 1997, inquiry from Hasbrouck to the County Administrator that generated the response from Datz was protected by the attorney-client privilege, but that Datz's *548 response was not. As to Datz's responding memo of January 21, the judge believed that it was not protected because it "[was] not authored apparently by the county counsel's office to his client."
Finally, with respect to the "MEMO TO THE FILE-LaPorta" document, the judge found that it was neither work product nor protected by the attorney-client privilege, apparently because it was prepared by Hasbrouck and transmitted to the GCPO "in connection with the encouragement to involve itself in a criminal investigation of Mr. LaPorta." The one remaining document was found by the judge to be protected by the attorney-client privilege.
At defendants' request, the judge stayed the order of turnover pending the resolution of this appeal. Plaintiff has not cross-appealed from the judge's determination that two of the documents were protected from disclosure by the attorney-client privilege. We have reviewed the three documents at issue in this appeal and conclude that all three of them contain Hasbrouck's attorney work-product. We further conclude that the privilege was not waived by communicating the work-product to the GCPO.
The work-product doctrine was first recognized by the Supreme Court of the United States in Hickman v. Taylor, and protects from disclosure those documents and other tangible things that a party or a party's representative prepares in anticipation of litigation. 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The doctrine recognizes the need for a lawyer to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Id. at 510-11, 67 S.Ct. 385. It is essentially a rule of procedure and has been recognized in New Jersey by court rule. R. 4:10-2(c). Like the federal rule, New Jersey recognizes for protection "documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative...." Ibid. An attorney's work-product may not be discovered unless "the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Ibid.[2] Even then, however, a court ordering such discovery is obligated to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Ibid.
It can fairly be said that the "MEMO TO FILELaPorta" and the memo from Datz to Freeholder Sweeney are documents prepared in the context of Hasbrouck's preparation for the defense of the litigation brought by plaintiff against the County for reinstatement and damages. The "MEMO TO FILELaPorta" contains Hasbrouck's analysis and mental impressions concerning various documents that he reviewed with respect to plaintiff's conduct. It is clearly work-product. Further, as noted earlier, a copy of the memo from Datz to Freeholder Sweeney was sent to Hasbrouck. Clearly, it was written in response to a request by Hasbrouck to the County Administrator for information concerning a certain bid document that Hasbrouck reviewed in connection with the subject litigation. Because it was material gathered by Hasbrouck in preparation for litigation or trial, it was clearly his work-product. *549 See Medford v. Duggan, 323 N.J.Super. 127, 133, 732 A.2d 533 (App.Div.1999)(holding that work-product privilege applies to documents prepared by attorney's agent, so long as it is prepared in anticipation of litigation or trial). Lastly, Hasbrouck's transcribed statement to the GCPO contained his mental impressions concerning the many documents and files reviewed by him as a part of the County's defense to plaintiff's suit for reinstatement. Thus, it also constitutes attorney work-product.
Plaintiff makes no effort to prove that he "has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." R. 4:10-2(c). Rather, plaintiff's primary contention is that defendants waived the privilege when Hasbrouck communicated the information to the GCPO. The concept of waiver is not specifically addressed in the Rule. However, waiver of privileges in general is recognized in our rules of evidence. N.J.R.E. 530; see Hannan v. St. Joseph's Hospital, 318 N.J.Super. 22, 29-31, 722 A.2d 971 (App.Div.1999)(discussing whether the work-product privilege was waived when the client used notes prepared in anticipation of litigation to answer interrogatories). The Evidence Rule provides in relevant part that a privilege is waived if "without coercion and with knowledge of his right or privilege, [a person] made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone." N.J.R.E. 530. It has been recognized, however, that not every disclosure constitutes a waiver of privilege. Rather, "courts have interpreted [the waiver] principle in a commonsensical way, fashioning a `common interest' doctrine which protects communications made to a non-party who shares the client's interests." In re State Com'n of Investigation, 226 N.J.Super. 461, 466, 544 A.2d 893 (App.Div.), certif. denied, 113 N.J. 382, 550 A.2d 484 (1988)(quoting United States v. Zolin, 809 F.2d 1411, 1417 (9th Cir.1987)).
The boundaries of the common interest exception are not perfectly defined. Id. at 467, 544 A.2d 893 (discussing the problem, however, in the context of the attorney-client privilege). New Jersey case law on the subject is non-existent in the context of work-product privilege. Federal case law on the subject, however, gives us guidance in resolving the issue before us.
The common interest exception may be asserted with respect to communications among counsel for different parties if "(1) the disclosure is made due to actual or anticipated litigation; (2) for the purposes of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties." Holland v. Island Creek Corp., 885 F.Supp. 4, 6 (D.D.C.1995); see also In re Bevill, Bresler & Schulman, 805 F.2d 120, 126 (3d Cir. 1986). It is not necessary for actual litigation to have commenced at the time of the transmittal of information for the privilege to be applicable. U.S. v. Schwimmer, 892 F.2d 237, 244 (2d Cir.1989), cert. denied, 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 31 (1991). Indeed, communications need not only be among counsel for the clients. Communications between counsel for a party and an individual representative of a party with a common interest are also protected. Ibid.
Importantly, it is not necessary for every party's interest to be identical for the common interest privilege to apply. Rather, the parties must simply have a "common purpose." U.S. v. McPartlin, 595 F.2d 1321, 1336 (7th Cir.1979), cert. denied, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979); see also, United States *550 v. American Telephone & Telegraph Co., 642 F.2d 1285, 1298 (D.C.Cir.1980)(criticizing earlier opinions that employed a narrow definition of "common interests" and restricted the concept to situations in which the relationship of the parties was similar to that between co-parties in a suit). Thus, as one court put it:
Whether an action is ongoing or contemplated, whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.
[In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129, 902 F.2d 244, 249 (4th Cir.1990).]
Applying the foregoing principles to this case, we conclude that although the interest of defendants and the GCPO may not have been identical, it is clear that they shared a common purpose. That is, defendants' purpose is to bar plaintiff's reinstatement and ancillary remedies because of his perceived illegal conduct while he was the Road Supervisor. The GCPO's purpose in this context is to investigate alleged criminal activity by persons holding public office and to prosecute such individuals with a view toward barring convicted public officers from employment in that capacity. See N.J.S.A. 2C:51-2. It is of no moment that the GCPO decided not to proceed criminally against plaintiff. The question as to whether the parties share a common interest "must be evaluated as of the time that the confidential information is disclosed." Holland, supra, 885 F.Supp. at 6. Nor is it significant that defendants were involved in civil litigation while the information transmitted by Hasbrouck was for the purpose of criminal prosecution, or that it was communicated to an agent of the prosecutor rather than to the prosecutor himself. In re Grand Jury Subpoenas, supra, 902 F.2d at 249; Schwimmer, supra, 892 F.2d at 244.
We agree with defendants that a party should feel free to turn over evidence of crimes to the government without fearing that to do so will result in privileged and confidential information falling into the hands of one's adversary in a related or contemplated civil proceeding. Generally, when such privileged information is turned over to a non-adversary who has a legitimate interest in the information, such as the GCPO here, there is no waiver unless it can be shown that there was a "conscious disregard" of the possibility that an adversary would gain access to the material. In re John Doe, 662 F.2d 1073, 1081 (4th Cir.1981), cert. denied, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982); see also Shields v. Sturm, Ruger & Co., 864 F.2d 379, 381-82 (5th Cir.1989)(holding that disclosure simply to another person who has an interest in the information but who is not reasonably viewed as a conduit to a potential adversary will not be deemed a waiver of the protection of the rule). There was no showing here that Hasbrouck consciously disregarded the possibility that the material might be transmitted to plaintiff. He had every reason to believe that his mental impressions of the evidence that he gathered would remain protected under New Jersey Court Rules, even if plaintiff could gain access to other privileged material by using the work-product rule exception contained in R. 4:10-2(c). That is so because mental impressions and strategy of counsel remain inviolate. See Jenkins v. Rainner, 69 N.J. 50, 350 A.2d 473 (1976).
*551 The judgment under review is reversed to the extent that it requires defendants to turn over the three documents in question.
NOTES
[1] These documents apparently have been released to plaintiff without objection.
[2] Another exception, not relevant here, is found in R. 4:10-2(d), concerning "facts known and opinions held by experts."