NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2395-22

ASSOCIATION FOR
GOVERNMENTAL
RESPONSIBILITY, ETHICS
AND TRANSPARENCY,

> APPROVED FOR PUBLICATION
>
> **May 13, 2024**
>
> **APPELLATE DIVISION**

     Plaintiff-Appellant,

v.

BOROUGH OF MANTOLOKING,
MUNICIPAL CLERK OF THE
BOROUGH OF MANTOLOKING,
and CUSTODIAN OF RECORDS,

     Defendants-Respondents.

---

Argued January 30, 2024 – Decided May 13, 2024

Before Judges Rose, Smith and Perez Friscia (Judge Smith dissenting).

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2729-22.

Donald Francis Burke argued the cause for appellant (Law Office of Donald F. Burke, attorneys; Donald Francis Burke and Donald Francis Burke, Jr., on the briefs).

Robin La Bue argued the cause for respondents (Rothstein, Mandell, Strohm, Halm & Cipriani, attorneys; Robin La Bue, on the brief).

The opinion of the court was delivered by

ROSE, J.A.D.

This appeal presents a novel issue, requiring us to determine whether the New Jersey Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, or the common law right of public access, mandates disclosure of an attorney's identity when the attorney renders legal advice to a colleague or friend about an ongoing prosecution. In the present matter, a municipal prosecutor sought counsel from an attorney who, in turn, rendered advice via email to the prosecutor's personal account. The prosecutor, in turn, disclosed the contents of the email in open court and provided a printed copy of the email to the defense, but redacted the sender's name and email address. The municipality thereafter denied a government records request for the unredacted email.

Plaintiff Association for Governmental Responsibility, Ethics, and Transparency (AGREAT) now appeals from the March 3, 2023 Law Division order denying its order to show cause to compel production of the email requested from defendants Borough of Mantoloking, its clerk, and its custodian of records (collectively, defendants). The motion judge concluded the email did not fall within OPRA's definition of a government record. We affirm the order under review and further hold the email is not subject to disclosure under the

common law. We also conclude, even if the email were a government record, the work product privilege and confidentiality exemptions under N.J.S.A. 47:1A-9(b) weight against disclosure.

I.

This appeal has its genesis in a quasi-criminal municipal court action against Donald F. Burke, Sr., counsel for AGREAT in the present matter. To give context to the issues raised on appeal, we summarize the nature of those proceedings from our prior decision reversing the Law Division's interlocutory discovery order and remanding the matter to the municipal court. See State v. Burke, No. A-0503-22 (App. Div. July 19, 2023) (slip op. at 1-19).

In October 2020, Jakob Weingroff filed a citizen's complaint in Mantoloking Municipal Court alleging Burke had committed various traffic infractions during their verbal altercation the prior month. Id. at 2. The complainant and defendant were not strangers; the bad blood between them emanated from "an ongoing property dispute" involving the men and their family members. Ibid.

At the time of the incident, Weingroff had resigned from his employment as a New Jersey State Police (NJSP) trooper. Id. at 3 n.1. Previously charged criminally with fourth-degree falsifying or tampering with records, N.J.S.A.

2C:21-4, and administratively with misconduct regarding the same unspecified incident, Weingroff was admitted into the pretrial intervention (PTI) program in 2018, and voluntarily forfeited his employment with the NJSP.  Ibid.

In view of a conflict of interest, Elizabeth J. Leahey was appointed prosecutor in the municipal matter.[1]  Burke pled not guilty to the traffic violations and sought discovery of Weingroff's prior employment, disciplinary, and "related criminal records."  Id. at 2.  After the State denied Burke's request, Burke moved to dismiss the complaint and compel discovery of Weingroff's records, arguing they were discoverable under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).  Id. at 3-5.  The municipal court denied Burke's application and issued a protective order barring discovery of the requested records.  Id. at 6-8.

The Law Division granted Burke leave to appeal from the municipal court's order.  Id. at 8.  During oral argument on August 22, 2022, Leahey stated Weingroff "recently revealed" the charges had been expunged in June 2020.  Id. at 9.  Seemingly concerned about the ramifications of disclosing the existence of the expungement order, Leahey stated, "I am revealing this information to

_____

[1] During oral argument before the motion judge in the present matter, Leahey explained the conflict.  Although a portion of the transcript is indiscernible, we glean from the record the conflict pertained to Burke's neighbor.

you under common law immunity as an officer of the court."[2]  Apparently addressing Donald F. Burke, Jr., who represented his father at the hearing, Leahey elaborated:

> I just want to remind you that any information relating to an expunged report, arrest record, or PTI are not admissible at trial, under N.J.S.A. 2C:52-27.  And that any adversary who knowingly reveals the existence of the arrest, the conviction, or related legal proceedings of note in open court with the knowledge that they are expunged is in violation of RPC 8.4.

At some point during the hearing, Leahey handed the defense[3] a copy of the email at issue, with the sender's name and email address redacted.  The subject line of the email states, "Lizzy – please review this."  Dated November 17, 2021, the email provides, verbatim:

> Lizzy – Two things:
>
> First, The information related to the expunged arrest and PTI is not admissible at trial:  Here is the statute:
>
> 2C:52-27.  Effect of expungement

---

[2]  Although the record reveals the transcript of the August 22, 2022 hearing was provided to the motion judge in the present matter, it was not supplied as part of the record on appeal.  See R. 2:5-4(a); see also R. 2:6-1(a)(1)(I).  Following our request, AGREAT made the transcript available to us.

[3]  It is unclear from the transcript whether both Burkes were present at the hearing and, if so, whether Leahey handed the email to Burke or his son.  We did not reference the November 17 email in our prior opinion.

5

Unless otherwise provided by law, if an order of expungement is granted, the arrest, conviction and any proceedings related thereto shall be deemed not to have occurred, and the petitioner may answer any questions relating to their occurrence accordingly, except as follows:

a. The fact of an expungement, sealing or similar relief shall be disclosed as provided in section 2C:52-8b.

b. The fact of an expungement of prior charges which were dismissed because of the person's acceptance into and successful completion of a supervisory treatment or other diversion program shall be disclosed by said person to any court that is determining the propriety of accepting said person into a supervisory treatment or other diversion program for subsequent criminal charges;

-------------------------------------------------------------------

Second, if your adversary knowingly reveals this in open court he himself is guilty of a d/p offense as well as an ethics violation RPC 8.4(b).

Remind him of this statute in open court on Thursday!!!

**N.J.S.A. 2C:52-30 – Except as otherwise provided in this chapter, any person who reveals to another the existence of an arrest, conviction or related legal proceeding with knowledge that the records and information pertaining thereto have been expunged or sealed is a disorderly person. Notwithstanding the provisions of section 2C:43-3, the maximum fine which can be imposed for violation of this section is $200.00.**

A-2395-22

Immediately following oral argument, the court denied Burke's motion. Id. at 10. We granted Burke leave to appeal from the August 22, 2022 order and reversed, concluding Burke "demonstrated both good cause and a compelling need for the subject records" under N.J.S.A. 2C:52-19. Id. at 17-18.

The following month, AGREAT made an OPRA request via email to the Borough clerk for "communications between Elizabeth Leahey and Jakob Weingroff . . . includ[ing] all emails, text messages and other forms of communication electronically maintained or hard copy." AGREAT provided Leahey's Gmail address and Weingroff's Hotmail address "[f]or ease in searching," but noted "they may have used others." AGREAT also requested a Vaughn[4] index.

One month later, following email exchanges with the Borough clerk that are not relevant here, AGREAT submitted a second OPRA request specifically seeking the November 17 email. The clerk responded within two days, noting "there are no responsive documents." Reproducing portions of the November 17 email in another email to the Borough clerk, the following day AGREAT

---

[4] Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973). A Vaughn index provides detailed justifications for the refusal to disclose documents claimed privileged. See Paff v. Div. of Law, 412 N.J. Super. 140, 161 n.9 (App. Div. 2010).

replied: "Please ask Ms. Leahey for this email and all emails in the chain which I assume she has overlooked."

Thereafter, the Borough's attorney, Robin La Bue, sent an email to AGREAT, stating the requestor's second OPRA request was denied because the November 17 email did not meet the definition of a public document under OPRA. See N.J.S.A. 47:1A-1.1. AGREAT replied within hours, contending the Borough's position was "baseless" and the email "must be disclosed" both under OPRA and the common law. On behalf of AGREAT, Burke sent a detailed memorializing letter to the Borough's counsel the next day.

La Bue denied Burke's ensuing request for a Paff[5] certification, asserting an affidavit was not required "for every OPRA request" and "the document [wa]s not being withheld under a claim of privilege." La Bue elaborated: "The requested document is a private email from a private attorney to another private attorney appointed as conflict prosecutor by the Borough of Mantoloking. Emails that she sends or receives within the scope of her representation of the State as prosecutor are public documents. Private emails are not."

---

[5] Paff v. N.J. Dep't of Labor, 392 N.J. Super. 334, 341 (App. Div. 2007) (requiring a public agency to produce a sworn statement detailing certain information concerning its search for records in response to an OPRA request).

In his response, Burke claimed the November 17 email "is plainly a government record because the subject matter [concerns] <u>State v. Burke</u>," the municipal matter assigned to Leahey as the Borough's conflict attorney. Citing the threatening nature of the email, Burke contended: "The requested email goes to the heart of OPRA." Burke further noted OPRA makes "no carveout for a public official using her personal email account." Instead, "the statute turns on whether a public official is communicating in the cour[se] of the public official's 'official business.'" <u>See</u> N.J.S.A. 47:1A-1.1.

Having reached an impasse, on AGREAT's behalf, Burke filed a two-count verified complaint and order to show cause seeking relief via a summary action pursuant to <u>Rule</u> 4:67-1(a). AGREAT challenged defendants' denial of its request under OPRA and the common law right of access.

Defendants answered, asserted various defenses, and filed Leahey's January 27, 2023 certification explaining the circumstances surrounding the November 17 email.[6] Leahey asserted, in pertinent part:

> 1. I was appointed as the [c]onflict [m]unicipal [p]rosecutor for the Borough of Mantoloking for the

---

[6] Although the Leahey certification was filed with the trial court, the parties did not include the document in their appellate appendices. <u>See</u> <u>R.</u> 2:5-4(a); <u>see also</u> <u>R.</u> 2:6-1(a)(1)(A). Following our request during oral argument, defendants provided us the certification.

purposes of representing the [S]tate in the matter of State v. Burke.

2. I do not practice municipal law full time. I maintain a private law practice in which I concentrate on real estate transactions, family law, estate law[,] and municipal court work.

3. The State v. Burke matter has been unusually complex and particularly contentious due to the lengthy history between the [d]efendant, Mr. Burke[,] and the [c]omplainant that goes well beyond the event in Mantoloking, and involves several different litigation matters in the Superior Court and Appellate Division.

4. A witness in this matter had a previous criminal incident expunged from his record and the [d]efendant Mr. Burke desired to utilize the subject matter of the expungement and the expungement itself to impeach the witness.

5. I reached out to a colleague to generally discuss his experience with the handling of expungements in [m]unicipal [c]ourt. I did not bill the Borough . . . for the receipt or review of this email, or any of my conversations with my friend. . . .

6. During the Law Division motion[,] . . . I had the email in my hand and Mr. Burke asked to see it. I handed him my copy of the email with the sender's name/email address crossed out.

7. Mr. Burke has a copy of this document in its entirety, he only wants the name or email address of my friend, presumably to subject my friend to harassment or to involve my friend in litigation in some way.

10

During summary proceedings before the motion judge on March 3, 2023, the parties maintained their positions regarding production of the November 17 email.[7] Burke acknowledged not every email between a prosecutor – municipal or State – and a colleague that memorialized advice was subject to disclosure under OPRA. Arguing "everything depends on context," Burke noted the email at issue was presented in court with "a self-serving redaction that meets no exemption."[8]

Immediately following argument, the motion judge rendered an oral decision briefly addressing the governing law pursuant to OPRA and the common law. Referencing the contents of the November 17 email, the judge noted "it appears to . . . cite . . . the [expungement] statutes with comments on how to approach this matter in court." Finding the email was "sent as advice," the judge concluded the email "was a private communication" that "does not come within a government record definition" under OPRA. In reaching his

---

[7] We glean from the March 3, 2023 transcript that oral argument was continued from a prior date. The parties did not provide the transcript of the first argument.

[8] AGREAT also argued it was entitled to the email communications between Leahey and Weingroff, which were the subject of its initial OPRA request. Because AGREAT does not renew that argument on appeal, it is deemed waived. See State v. Shangzhen Huang, 461 N.J. Super. 119, 125 (App. Div. 2018), aff'd o.b., 240 N.J. 56 (2019); see also Pressler and Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2024).

decision, the judge found the email: "was maintained on [Leahey's] private server"; "was maintained as between two colleagues"; and "was not maintained as a public record."

Before us, AGREAT reprises its argument that the unredacted November 17 email, which "directed a municipal prosecutor to threaten an adversary with criminal and ethics charges for requesting relevant, exculpatory information," is subject to disclosure under OPRA and the common law right of access. AGREAT further claims, as a member of the public who engaged in email communications with a municipal prosecutor concerning her official duties, the sender had no reasonable expectation of privacy in the disclosure of his name and email address. AGREAT also argues the motion judge failed to evaluate the requestor's common law claims, and the balancing test enunciated by the Court in Loigman v. Kimmelman, 102 N.J. 98, 113 (1986), weighs in favor of disclosure.

Defendants counter the email neither falls within the definition of a government record under OPRA nor is subject to disclosure under the common law. In the alternative, defendants argue even if the November 17 email were construed as a government record, "the sender has a reasonable expectation of privacy under N.J.S.A. 47:1A-1." Additionally, although prior to the present

litigation La Bue expressly stated the email was not "withheld under a claim of privilege," defendants now claim the email is protected under the work product privilege. In reply, AGREAT asserts any privilege was waived when the prosecutor "used a redacted version" of the November 17 email in court and provided it to the defense.

## II.

We commence our review with well-settled principles. "New Jersey law recognizes two distinct procedures by which individuals and entities may seek an order compelling the disclosure of public records." Gannett Satellite Info. Network, LLC v. Township of Neptune, 254 N.J. 242, 248 (2023). The first cause of action is a claim under OPRA. Ibid. "The second cause of action . . . is a claim pursuant to the common law, in which the requestor is not limited to the categories of information subject to disclosure under OPRA." Id. at 249 (citing Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 143 (2022)). We employ the same de novo review of a trial court's legal conclusions concerning access to public records under OPRA and the common law right of access. Drinker Biddle & Reath LLP v. N.J. Dep't of L. & Pub. Safety, 421 N.J. Super. 489, 497 (App. Div. 2011).

A.

OPRA's history and purpose have been well chronicled by our Supreme Court and need not be reiterated here. Kovalcik v. Somerset Cnty. Prosecutor's Off., 206 N.J. 581, 588 (2011) (citing Mason v. City of Hoboken, 196 N.J. 51, 64-67 (2008)); see also Libertarians for Transparent Gov't v. Cumberland County, 250 N.J. 46, 54 (2022) (citing Burnett v. County of Bergen, 198 N.J. 408, 421 (2009)). Suffice it to say, "[t]he Legislature passed OPRA in 2001 to replace the then-existing Right to Know Law, L. 1963, c. 73, which 'did not keep pace with the vast technological advances that changed the ways citizens and public officials communicate and store information.'" Simmons v. Mercado, 247 N.J. 24, 38 (2021) (quoting Paff v. Galloway Township, 229 N.J. 340, 352 (2017)). And we are guided by the statute's driving force – "access to public records fosters transparency, accountability, and candor." Libertarians, 250 N.J. at 59.

To achieve its purpose, OPRA "broadly defin[es] 'government records,' N.J.S.A. 47:1A-1.1, and . . . publicly declar[es] that they shall be accessible, N.J.S.A. 47:1A-1." Kovalcik, 206 N.J. at 588. OPRA's definition of a government record thus includes

> any paper, written or printed book, document, drawing,
> map, plan, photograph, microfilm, data processed or

14

image processed document, information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof, or that has been received in the course of his or its official business by any such officer, commission, agency, or authority of the State or of any political subdivision thereof, including subordinate boards thereof. The terms shall not include inter[]agency or intra[]agency advisory, consultative, or deliberative material.

[N.J.S.A. 47:1A-1.1.]

"The public's right to disclosure, while broad, is not unlimited." Bozzi v. City of Jersey City, 248 N.J. 274, 284 (2021). Indeed, "OPRA itself makes plain that 'the public's right of access [is] not absolute.'" Kovalcik, 206 N.J. at 588 (alteration in original) (quoting Educ. L. Ctr. ex rel. Abbott v. N.J. Dep't of Educ., 198 N.J. 274, 284 (2009)). Accordingly, "OPRA exempts numerous categories of documents and information from disclosure." Ibid. For example, OPRA provides "all government records shall be subject to public access unless exempt" under the act, another statute, regulation, court rule, or federal law, N.J.S.A. 47:1A-1, -9(a), or claim of privilege or confidentiality, N.J.S.A. 47:1-9(b); see also R. 7:7-7(d) (protecting from disclosure "discovery of a party's work product, consisting of internal reports, memoranda or documents made by

15

that party or by that party's attorney or agents, in connection with the investigation, prosecution or defense of the matter" in municipal matters).

In addition, "a public agency has a responsibility and an obligation to safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1. As our Supreme Court has recognized, "OPRA's legislative history . . . offers direct support for a balancing test that weighs both the public's strong interest in disclosure with the need to safeguard from public access personal information that would violate a reasonable expectation of privacy." Burnett, 198 N.J. at 427. "To balance OPRA's interests in privacy and access," the Court adopted the factors previously established in Doe v. Poritz, 142 N.J. 1 (1995):

> (1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access.
>
> [Ibid. (quoting Doe, 142 N.J. at 88).]

16

B.

"The common law right of access remains a distinct basis upon which to access public records." In re N.J. Firemen's Ass'n Obligation to Provide Relief Applications Under Open Pub. Records Act, 230 N.J. 258, 280 (2017); see also Michelson v. Wyatt, 379 N.J. Super. 611, 624 (App. Div. 2005) (stating the common law right "has not been limited by OPRA"). A "public record" under the common law is

> required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office.
>
> [In re N.J. Firemen's Ass'n Obligation, 230 N.J. at 281 (quoting Nero v. Hyland, 76 N.J. 213, 222 (1978)).]

Thus, the essential elements of a public record have been summarized as "a written memorial . . . made by a public officer," who is "authorized by law to make it." Ibid.; see also Rivera, 250 N.J. at 143-44.

Our Supreme Court has long deemed documents public records when they "were created by, or at the behest of, public officers in the exercise of a public function." Keddie v. Rutgers, 148 N.J. 36, 50 (1997); see also Bergen Cnty. Improvement Auth. v. N. Jersey Media Grp., 370 N.J. Super. 504, 518 (App.

Div. 2004) (affirming the trial court's decision that audited financial reports prepared by a private party were government records under the common law right of access because they were prepared at the request of the public entity and created "to facilitate [its] oversight responsibilities as the license holder for [a] public hospital").

"However, concluding that a document is a 'public record' under the common law, is only the first step in the analysis." Bergen Cnty. Improvement Auth., 370 N.J. Super. at 519. "'To gain access to this broader class of materials, the requestor must make a greater showing than OPRA requires,' namely, '(1) the person seeking access must establish an interest in the subject matter of the material; and (2) the citizen's right to access must be balanced against the [government]'s interest in preventing disclosure.'" Gannett, 254 N.J. at 257 (quoting N. Jersey Media Grp., Inc. v. Township of Lyndhurst, 229 N.J. 541, 578 (2017)).

As to the first prong, "[t]he requisite interest necessary to accord a plaintiff standing to obtain copies of public records may be either 'a wholesome public interest or a legitimate private interest.'" Educ. L. Ctr., 198 N.J. at 302 (quoting Higg-A-Rella, Inc. v. County of Essex, 141 N.J. 35, 47 (1995)).

Regarding the second prong's balancing test, the court must consider the "six non-exclusive factors" set forth by the Court in <u>Loigman</u>:

> (1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decision[-]making will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.
>
> [<u>Gannett</u>, 254 N.J. at 257 (quoting <u>Loigman</u>, 102 N.J. at 113).]

### III.

### A.

Against these guiding principles, we first consider whether the November 17 email is a government record under OPRA.

As a preliminary matter, we reject defendants' contention that "Leahey did not receive the email in her official capacity as a municipal prosecutor." The parties do not dispute that Leahey disclosed the contents of the email in court

during the prosecution of State v. Burke and furnished a redacted copy to the defense. Although the email was sent to Leahey's personal account and, as the motion judge found, "maintained on her private server," we are persuaded OPRA's broad reach can include emails concerning government business, sent to or from personal accounts of government officials – if the emails fall within the definition of government records. Indeed, the Government Records Council (GRC) has so held. See Meyers v. Borough of Fair Lawn, GRC Complaint No. 2005-127 (May 11, 2006); see also Demitroff v. Buena Vista Township, GRC Complaint No. 2018-27 (January 7, 2020) (holding a government record maintained on a mayor's personal Facebook page is subject to disclosure but does not render the entire personal Facebook page subject to disclosure).

But documents do not constitute government records under OPRA "merely because they were 'made' by a government official." O'Shea v. W. Milford Bd. of Educ., 391 N.J. Super. 534, 538 (App. Div. 2007). In O'Shea, the West Milford Board of Education received a request for, among other documents, the meeting minutes from the Board's executive session. Id. at 536. The request provided "[i]f the minutes of the executive session are not [on] audio tape, I am requesting a copy of the original handwritten notes." Ibid. (alterations in original). The Board informed the requestor there were no recordings and

declined to provide any handwritten notes, stating "they [were] not government records." Id. at 536-37. The GRC ultimately agreed with the Board, and we affirmed. Id. at 537.

We concluded, "While the Secretary's job includes the responsibility to record the proceedings of the Board, . . . that responsibility is carried out by preparing the minutes." Id. at 538. The Board Secretary's handwritten notes "jotted down as a memory aid to assist in preparing the formal minutes, are [not] a public record merely because they were 'made' by a government official." Ibid. Otherwise, "every yellow-sticky note penned by a government official to help him or her remember a work-related task would be a public record. Such absurd results were not contemplated or required by OPRA." Id. at 539.

As a municipal prosecutor, Leahey was charged with representing the Borough and "handling all phases of the prosecution of an offense, including but not limited to discovery, pretrial and post-trial hearings, motions, [and] dismissals." N.J.S.A. 2B:25-5(a). Somewhat analogous to the Secretary's notes at issue in O'Shea, the contents of the November 17 email furthered Leahey's duties and responsibilities by serving as an aid in court during her argument against Burke's motion for Weingroff's expunged records. Stated another way, Leahey's argument before the judge was her work-related task while the email

served as an aid in formulating that argument. See State v. Washington, 256 N.J. 136, 164 (2024) (recognizing the well-established premise that a prosecutor has a "duty to adequately prepare for trial"); In re Segal, 130 N.J. 468, 480 (1992) ("Because the State is the municipal prosecutor's client, a failure to discharge the obligations of his [or her] office is a violation of a prosecutor's professional responsibility to represent the client diligently.").

We recognize the November 17 email did not memorialize Leahey's thought processes as did the Secretary's notes in O'Shea. Instead, the email set forth her colleague's knowledge and advice about the expungement statutes. As the trial court stated during colloquy with counsel, the November 17 email was akin to "a script on how to make an argument" with citation to the pertinent statutes. Had Leahey iterated the contents of the email in open court instead of turning over the document, the defense would not have been entitled to Leahey's source of her argument or the name of the colleague who rendered advice as to how to frame that argument vis-à-vis the statutes. In our view, the disclosure of the contents of the email memorializing the sender's advice, name, and email address does not transform the document into a government record.

A further analogy can be drawn from the statute's definition of a government record, which excludes from its terms "inter[]agency or

intra[]agency advisory [or] consultative . . . material." N.J.S.A. 47:1A-1.1; see also Educ. L. Ctr., 198 N.J. at 285 (recognizing when the deliberative process privilege is invoked, a governmental entity may "'withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated'") (quoting In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 83 (2000)). If the Legislature intentionally excluded advisory and consultative material between or among agencies from the statutory definition, how then would an email memorializing legal advice between colleagues be deemed a government record?

Our dissenting colleague misconstrues our application of the "consultative . . . material" exclusion set forth in the statutory definition of a government record. We recognize the November 17 email does not fall squarely within any exception to the government record definition under OPRA. We do not – and need not – conclude there exists any sort of agency relationship between Leahey and the sending attorney. We therefore disagree with our colleague that the sender's identity is necessary "[t]o conduct a proper analysis under OPRA." We simply note the Legislature intentionally shielded from disclosure consultative materials between and among public agencies by exempting those materials

from the definition of a government record. By analogy, that protection suggests an email memorializing legal advice among colleagues is not a government record.

We therefore conclude the November 17 email is not a government record as defined in N.J.S.A. 47:1A-1.1 and, as such, the sender's name and address are not subject to disclosure under OPRA. Accordingly, we need not address the Doe balancing test. See 142 N.J. at 88. For the sake of completeness, however, we have considered the Doe factors and conclude the sending attorney's reasonable expectation of privacy favors non-disclosure.

Perceiving the email contents as a threat by directing the prosecutor, AGREAT contends the name and email address of the sender is "necessary for public oversight" and consonant with OPRA's purpose (factors six and seven). Even assuming these factors favored disclosure, the remaining factors do not. The requested record is a single email from an unknown colleague of a municipal prosecutor, sent in response to the prosecutor's general request for advice in an "unusually complex and particularly contentious" assignment in a quasi-criminal municipal matter (factor one). The substance of the email provides statutory citation and the sender's advice, all of which has been

disclosed to AGREAT's counsel, save for the sending attorney's identity and email address (factor two).

Moreover, the potential for harm regarding further nonconsensual disclosures is substantial. In our view, compelling disclosure of the name and email address of attorneys who render advice to one another has the potential for a chilling effect on the collegiate relationship among attorneys and their private communications concerning their shared legal advice (factor three). Additionally, although defendants did not articulate specific injury that would result to the relationship between Leahey and the sender if his name and address were disclosed – and defendants bear the burden of proof – it is clear from Leahey's certification that the sender was a colleague and friend, whose name and address she redacted before providing the November 17 email to Burke (factor five). Finally, because Leahey redacted the sender's name and address, there exists no other means to provide the requested record without disclosing personal information (factor six).

### B.

Nor are we convinced disclosure of the sending attorney's name and email address is mandated under the common law right of public access. Simply stated, the requested information is not "a written memorial . . . made by a public

officer," who is "authorized by law to make it." In re N.J. Firemen's Ass'n Obligation, 230 N.J. at 281 (quoting Nero, 76 N.J. at 222). Moreover, although Leahey sought guidance from her friend and colleague, there is no evidence in the record the email was made at her "behest." See Keddie, 148 N.J. at 50. We therefore conclude the sending attorney's name and address is not a "public record" under the common law.

Assuming otherwise for the sake of argument, in our view the balancing test under the common law weighs in favor of non-disclosure. Against the "contentious" nature of the municipal court proceedings, on this record, it is difficult to conclude AGREAT's public interest is "wholesome" or its private interest is "legitimate." See Educ. L. Ctr., 198 N.J. at 302. But even were we to so conclude, we are not persuaded AGREAT's right to access is outweighed by "the [Borough]'s interest in preventing disclosure." See Gannett, 254 N.J. at 257. Indeed, in light of the discrete request for disclosure of the sending attorney's name and email address, the Loigman factors are not readily applicable. See 102 N.J. at 113.

IV.

In view of our disposition, we need not reach defendants' belated claims under the work product doctrine. Recognizing OPRA's strong public policy

26                                                                    A-2395-22

favoring broad public access to government records, however, we briefly comment that even if the November 17 email were considered a government record, the sender's information nevertheless would be shielded from disclosure as work product under N.J.S.A. 47:1A-9(b).

Pursuant to N.J.S.A. 47:1A-9(b), OPRA does not "abrogate or erode any executive or legislative privilege or grant of confidentiality . . . established or recognized by the Constitution of this State, statute, court rule or judicial case law, which privilege or grant of confidentiality may duly be claimed to restrict public access" to a government record.  Privileged or confidential records are exempt from disclosure.  The foundation of the work product privilege is the recognized competing public policy interest in "bestow[ing] the confidentiality needed to foster a client's best interests." O'Boyle v. Borough of Longport, 218 N.J. 168, 183 (2014).

As our Supreme Court has acknowledged, there is a well-established "need for lawyers to 'work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" Id. at 189 (quoting Hickman v. Taylor, 329 U.S. 495, 510 (1947)).  Materials created in anticipation of litigation at the direction of counsel are generally protected by the work product privilege.  See K.L. v. Evesham Twp. Bd. of Educ., 423 N.J.

27

Super. 337, 354 (App. Div. 2011); Gannett N.J. Partners, LP v. County of Middlesex, 379 N.J. Super. 205, 219 (App. Div. 2005) (deeming "County Counsel's note to his secretary and her response to him . . . attorney work product").

Moreover, in Gannett N.J. Partners, we observed the voluntary disclosure of some documents under OPRA may constitute a waiver of the right to further dispute the disclosure of other documents, but determined consideration of the underlying confidentiality and privilege exemptions alleged for each withheld document was warranted. 379 N.J. Super. at 213. "It has been recognized . . . that not every disclosure constitutes a waiver of privilege." Laporta v. Gloucester Cnty. Bd. of Chosen Freeholders, 340 N.J. Super. 254, 261 (App. Div. 2001). Further, we have observed that "courts have interpreted [the waiver] principle in a commonsensical way." Ibid. (alteration in original) (quoting In re State Comm'n of Investigation, 226 N.J. Super. 461, 466 (App. Div. 1988)).

We recognize, in addressing the production of government records, it is often necessary to balance the competing interests of disclosure against the exemptions of privilege, confidentiality, and privacy. Indeed, in our view, Leahey's in-court accommodation of her adversary's request to see the document she read aloud, which contained the State's legal argument, does not pierce or

28

waive the confidentiality of the sender's information. Otherwise, as we have stated, the free-flowing exchange of information and advice between colleagues – a cornerstone of the legal profession – would be stymied. Here, the recognized work product privilege and confidentiality exemptions under N.J.S.A. 47:1A-9(b) weigh against disclosure.

We are therefore unpersuaded that Leahey's in-court reading of the legal arguments contained in the email and sharing of a redacted copy constituted a waiver of the work product protection of the entire email, including the sender's name and email address. See N.J.R.E. 530 (providing the "disclosure of any part of the privileged matter" only waives work-product protection where "waiver is intentional"; "the disclosed and undisclosed communications or information concern the same subject matter"; and "they ought in fairness to be considered together"). Assuming arguendo the first two prongs are satisfied, unlike our dissenting colleague, we perceive nothing "inherently unfair" about protecting the sender's name and email address from disclosure under the circumstances of this case. Rather, such protection is in line with the strong policy behind shielding attorney communications. We conclude the disclosure of the contents of the email did not waive the undisclosed sender's name and

email address, all of which constituted work product protected under N.J.S.A. 47:1A-9(b).

* * * * *

We are cognizant that the circumstances presented in this appeal are unique – an OPRA request limited to the name and email address of an attorney by the attorney for the requestor, who also is the defendant in the underlying quasi-criminal action and who perceives the contents of the disclosed communication as a threat to quell his interrogation of a witness in that matter. We take no position on AGREAT's contention that the November 17 was threatening in nature or – as our dissent colleague suggests – that the municipal prosecutor was improperly influenced by her colleague's advice. We simply conclude the disclosure under OPRA or the common law right of access should not be used as a sword to access shielded information. See N.J.S.A. 47:1A-9(b); R. 7:7-7.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2395-22

_____

**SMITH, J.A.D., dissenting.**

I submit that the public has a right to know if, and when, the prosecution of one of our citizens has been improperly influenced. Based on this principle, I respectfully disagree with the majority. I would find that the disputed email sent to the municipal prosecutor is a government record under OPRA and would not reach the common law right of access analysis. I would also hold, on these unique facts, that while the email's sender has a reasonable expectation of privacy, a Doe analysis warrants disclosure of the full, unredacted email, including the name and email address of the sender.

"OPRA is designed to provide the public with 'ready access to government records.'" Libertarians for Transparent Gov't v. Cumberland Cnty., 250 N.J. 46, 54 (2022) (quoting Burnett v. Cnty. of Bergen, 198 N.J. 408, 421 (2009)). "To understand the meaning of [OPRA], we look for the Legislature's intent." Ibid. (citing DiProspero v. Penn, 183 N.J. 477, 492-93 (2005)). "We begin with the text of the statute because the language the Legislature chooses is 'generally . . . the best indicator of [its] intent.'" Ibid. (quoting DiProspero, 183 N.J. at 492). "[OPRA] declares at the outset that 'all government records shall be subject to public access unless exempt.'" Ibid. (quoting N.J.S.A. 47:1A-1).

The statute broadly defines a government record, while excluding advisory and consultative material transmitted between agencies or within an agency. See N.J.S.A. 47:1A-1.1 ("The terms shall not include inter[]agency or intra[]agency advisory, consultative, or deliberative material.").

Any inquiry on this record must first resolve whether the disputed email in question is a government record under OPRA. While I agree with the majority's conclusion that Leahey, a public official, received the disputed email and that it was used or maintained in the course of her prosecution of Burke, I part ways with the conclusion that the email falls under the umbrella of excluded "inter-agency or intra-agency advisory, consultative, or deliberative material."

When determining whether the statute's exclusion of "inter-agency or intra-agency advisory, consultative, or deliberative material" acts to bar the email's full contents, there are two related considerations: did Leahey waive the work-product privilege when she disclosed the email in open court; and, can the email be considered an inter- or intra-agency communication at all if we do not know the identity of the sender.

As a first step, I consider the work-product implications presented by this unusual record. Our jurisprudence recognizes that the work product privilege can be waived. See Laporta v. Gloucester Cnty. Bd. of Chosen Freeholders, 340

2

N.J. Super. 254, 261 (App. Div. 2001) ("waiver of privileges in general is recognized in our rules of evidence"); see also O'Boyle v. Borough of Longport, 218 N.J. 168, 189 (2014) ("[I]n most instances, disclosure by an attorney of his or her work product to a third-party functions as a waiver of the protection accorded to an attorney's work product.").

For municipal court, the controlling work-product privilege rule is Rule 7:7-7.[9] Subsection (a) of the rule, Scope, states that where "the government is represented by the municipal prosecutor . . . , discovery shall be available to the parties only as provided by this rule, unless the court otherwise orders." Subsection (d), Documents Not Subject to Discovery, states:

> This rule does not require discovery of a party's work product, consisting of internal reports, memoranda or documents made by that party or by that party's attorney or agents, in connection with the investigation, prosecution or defense of the matter. Nor does it require discovery by the government of records or statements, signed or unsigned, by defendant made to defendant's attorney or agents.

---

[9] Rule 7:7-7 differs somewhat from its companion civil rule, which assigns the court a gatekeeping role for material deemed privileged. "[T]he court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation." R. 4:10(2)(c). Rule 7:7-7 does not assign such a role to the municipal court.

I submit that this rule does not readily accommodate the fact pattern presented here, the State's strategic disclosure of certain privileged material while it simultaneously withholds material it alone decides is harmful.

Next, N.J.R.E. 530 speaks to the work product privilege waiver question. N.J.R.E. 530 tells us that disclosure of work product materials in a state proceeding will "extend[] to an undisclosed communication" only where "(A) the waiver is intentional; (B) the disclosed and undisclosed communications or information concern the same subject matter; and (C) they ought in fairness to be considered together." N.J.R.E. 530(c)(1)(A)-(C). Conversely, the rule also states that disclosure of work product "does not operate as a waiver in a state proceeding if: (A) the disclosure is inadvertent; (B) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (C) the holder promptly took reasonable steps to rectify the error." N.J.R.E. 530(c)(2)(A)-(C).

With these guidelines in place, I would consider the record, which shows Leahey turned over the November 17, 2021 email voluntarily and intentionally. This act simultaneously satisfies the first element of N.J.R.E. 530(c)(1) and renders N.J.R.E. 530(c)(2) inapplicable. It follows that, under N.J.R.E. 530(c)(1), there are two issues to resolve: whether the disclosed and undisclosed information (the substance of the disputed email and the name and email address

4

of its sender, respectively) "concern the same subject matter"; and whether "they ought in fairness to be considered together."  N.J.R.E. 530(c)(1)(B), (C).

As to the disclosed and undisclosed information, only one document need be scrutinized:  the November 17, 2021 email.  The name and the email address of the sender provide the source of the "reminder" to Burke, a defendant facing multiple charges in municipal court, that he could also be guilty of ethics violations and perhaps charged with another crime.  As Leahey certified, she received the email from "a colleague" after reaching out to "generally discuss his experience with the handling of expungement in Municipal Court" because Leahey "do[es] not practice municipal law full time."  As a form of communication containing detailed legal advice, the identity of the person who sent the email cannot be separated from its contents, or arbitrarily be said to concern a separate subject matter.  In court, Leahey laid a compelling foundation for why the communication was being made.  While the email's substance clearly provided guidance to Leahey, the sender's identity is tied to the substance and cannot be said to represent "different" subject matter.

Turning to the question of whether name and address of the sender and the substance ought fairly to be considered together, Leahey's actions speak for themselves.  The municipal prosecutor's disclosure of the disputed email

contents without revealing its sender is inherently unfair. After reading its contents into the record, Leahey intentionally disclosed the email to Burke, including its recommendation to "remind" him that the spectre of additional ethics and criminal charges loomed. This targeted disclosure was to the State's advantage, as it warned Burke away from using an anticipated strategy, challenging the veracity of one of the State's witnesses, by threatening potential additional prosecution. Leahey essentially used the work product privilege waiver as a sword. Next, Leahey deployed the privilege as a shield, insulating the identity of her "colleague" when she redacted the name and email address from the document she turned over.

The unique facts here present a paradox, which complicates our fairness analysis. To conduct a proper analysis under OPRA of whether the email is a government record, the name and email address of the sender is required.

We have examined the scope of what constitutes a government record under OPRA and whether the exception encompassing the deliberative process privilege applies to bar recovery. See Bozzi v. City of Atl. City, 434 N.J. Super. 326, 336-39 (App. Div. 2014) (bid specifications for contract award by city considered government records under OPRA and not "advisory, consultative, or

deliberative material").  In cases like <u>Bozzi</u>, it is the <u>deliberative content</u> that is at issue, and not the identity of the persons who engaged in the deliberation.[10]

Because the sender's information was redacted, and their identity remains unknown, we cannot know whether the advisory and consultative material in the email was inter[] or intra[] agency.  The majority makes this assumption, and the record does not support it.  It is equally possible that the material is neither. I am satisfied that Leahey waived work product privilege, as to the entire email, under <u>Rule</u> 7:7-7 and N.J.R.E. 530.

I conclude that the intra-agency and inter-agency exception to the definition of a public record for purposes of OPRA under N.J.S.A. 47:1A-1

---

[10]  <u>See also</u> <u>Educ. L. Ctr. v. N.J. Dep't of Educ.</u>, 198 N.J. 274, 299–300 (2009) ([I]ndividual documents may not be capable of being determined to be, necessarily, deliberative material, or not, standing alone.  A court must assess such fact-based documents against the backdrop of an agency's deliberative efforts in order to determine a document's nexus to that process, and its capacity to expose the agency's deliberative thought-processes."); <u>McGee v. Twp. of E. Amwell</u>, 416 N.J. Super. 602, 618 (App. Div. 2010) (concluding sender/recipient's departure from public office did not preclude her emails from protection by the "advisory, consultative, or deliberative" exception"); compare <u>In re Application for Med. Marijuana Alt. Treatment Ctr. for Pangaea Health & Wellness, LLC</u>, 465 N.J. Super. 343, 379 (App. Div. 2020) (holding Department was not obligated to reveal the identities of the review committee members under the exemption, but this was on the basis of knowing the communication was between agency members).

cannot apply to these facts, and further conclude that the disputed email <u>is</u> a public record under OPRA.

Finding the entire email a public record, the next question involves the privacy expectations of the sender. I would conclude the email's sender had a reasonable expectation of privacy, based on the existence of the work product privilege.

The record clearly demonstrates that the municipal prosecutor waived the privilege. It follows that a balancing of "the statute's competing aims" of "ready access to government records while safeguarding a citizen's reasonable expectation of privacy" is in order. <u>Brennan v. Bergen Cnty. Prosecutor's Off.</u>, 233 N.J. 330, 340 (2018). To balance those interests, we apply the factors set forth by the Supreme Court in <u>Doe v. Poritz</u>, 142 N.J. 1 (1995).[11]

The type of record requested is <u>Doe</u> factor one. Plaintiff seeks the name and email address of a person who contacted the Borough's conflict municipal prosecutor to assist in the performance of official duties, in this case, the

---

[11] As cited by the majority, they are: (1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access. <u>Doe</u>, 142 N.J. at 88.

prosecution of a citizen. I note that the Legislature has declared that "municipal prosecutors are a critical component of New Jersey's system for the administration of justice." N.J.S.A. 2B:25-1. That said, I respectfully submit that, on these facts, the public has a substantial interest in learning who directed and influenced this municipal court prosecution. The point is scalable, and I respectfully submit, is an important general proposition. The public has a substantial interest in knowing who directs and influences criminal court proceedings in our state by offering a prosecutor scripts and arguments to use in court. In considering this Doe factor, I take no position on whether such influence is generally benign or malign. It is entirely possible, even likely, that the legal advice comes from a licensed member of the bar or authorized legal researcher who does not have a conflict of interest in this particular matter. The public should simply be aware of the source and nature of such influence once the work product privilege has been waived. I conclude this factor weighs in favor of disclosure.

As to Doe factor two, the information contained in the record sought, the Borough argues that the sender "was not participating in an inherently public act, seeking to influence government decision making, or engaging in a dialogue with public officials or employees about public business." I would reject that

argument, as there in nothing in the record to evidence the sender's intent. More significantly, the record does show that the sender emailed Leahey about a municipal court matter that she was assigned due to a conflict, and the email provided detailed advice on how to perform an element of her prosecutorial function. I am not persuaded the Borough has demonstrated that factor two weighs in favor of concealing the sender's identity.

Doe factor three is the potential for harm in any subsequent nonconsensual disclosure. It is the Borough's burden to show the "denial of access is authorized by law." N.J.S.A. 47:1A-6. Here, no such showing has been made. The Borough briefly suggests that the potential harm may include "harassment and litigation[,]" presumably by AGREAT, Burke, or their agents. But neither the Borough nor Leahey provide any credible basis for this alleged harm outside of their own speculation. See Paff v. N.J. Dep't of Lab., 392 N.J. Super. 334, 340 (App. Div. 2007) ("[S]tatements made by counsel in briefs are not an adequate substitute for sworn statements made by parties."). The Borough has failed to meet its burden, and I would conclude this factor weighs in favor of disclosure.

Doe factor four is the injury from disclosure to the relationship in which the record was generated. The Borough argues that disclosure of the sender's name and email address may chill communications between attorneys "for fear

that their identities could be released[,] and they could be subject to legal action or ethics charges resulting therefrom." The Borough supplies no evidence or case law to support this proposition. The record shows the trial court addressed this concern at the summary proceeding and concluded that "[it is] the obligation of the officer of the court to research [advice] and make sure that it's reliable." The disclosure of a legal research memo should not "chill" potential attorney communications. Attorneys who, in good faith, prepare legal research memoranda for their colleagues will clearly be protected by the work product privilege. Only an intentional act of disclosure can defeat that privilege in the municipal court context. I would conclude this factor weighs in favor of disclosure.

Doe factor five is the adequacy of safeguards to prevent unauthorized disclosure. Here there are no specific safeguards in place to prevent the requestor from publishing this information. However, I conclude there is minimal risk of harm as this is a single name and email at risk of being disclosed rather than a dissemination of multiple citizens' social security numbers. See Burnett v. Cnty. of Bergen, 198 N.J. 408, 434 (2009) ("Disclosure of the unredacted records thus raises a number of risks. Nothing would prevent plaintiff's paying customers from using the database for inappropriate purposes.

. . . [or] prevent plaintiff from reselling its searchable database or placing it on the Internet if its marketing approach were to change."). This factor weighs, albeit slightly given the actual information at issue, in favor of non-disclosure.

Doe factor six is the degree or need for access. The Borough argues there is no legitimate public purpose that would be served via disclosure of the sender's name and email address. As referenced in the factor one analysis, the public has an interest in knowing who influences municipal prosecutions, and I would conclude factor six weighs in favor of disclosure.

Doe factor seven considers whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access. This analysis tracks factors one and six. The underlying rationale of OPRA is to "inform the public about agency action." MAG Ent., LLC, 375 N.J. Super. 534, 545 (App. Div. 2005). If an outside party influences municipal prosecutions and the actions of the municipal prosecutor herself, the public has a right to know who has exerted such influence on their municipal court's "actions." I would conclude that factor seven favors disclosure.

In sum, a balancing of the Doe factors clearly favors disclosure.

I conclude, on this record, that the public's interest in transparency during the prosecution of its citizens outweighs the sender's interest in privacy where

the municipal prosecutor knowingly and voluntarily disclosed the substantive portion of the email.

I respectfully disagree with my colleagues. I would reverse the trial court and find that OPRA compels disclosure of the sender's name and email address.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-2395-22